**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Patrick T. Manion, Jr.,

Plaintiff,

v.

Stephen E. Nagin,
Herzfeld & Rubin,
Herzfeld & Rubin, P.C.,
Litchford & Christopher, P.A.
Nagin, Gallop, Figueredo, P.A., and
Boat Dealers' Alliance, Inc.,

Defendants.

**MEMORANDUM OPINION AND ORDER**
Civil No. 00-238 ADM/RLE

---

Richard A. Lockridge, Esq., Eric C. Tostrud, Esq., Kristine M. Boylan, Esq., Lockridge, Grindal, Nauen, P.L.L.P., Minneapolis, Minnesota; William J. French, Esq., and Glen E. Lavy, Esq., Conant, French & Chaney, L.L.P., Dallas, Texas, appeared for and on behalf of the Plaintiff.

Thomas J. Shroyer, Esq., and Mathew M. Meyer, Esq., Moss & Barnett, A Professional Association, Minneapolis, Minnesota, appeared for and on behalf of the Defendants Nagin, Gallop, Figueredo, P.A., Stephen E. Nagin, Herzfeld & Rubin, and Herzfeld & Rubin, P.C.;

Stephen M. Warner, Esq., and Timothy R. Murphy, Esq., O'Neill & Murphy, L.L.P., Saint Paul, Minnesota, appeared for and on behalf of the Defendant Litchford & Christopher, P.A.;

Sarah J. Batzli, Esq., Cousineau, McGuire & Anderson, Chartered, Minneapolis, Minnesota; and Paul M. Harris, Esq., Gadsby Hannah, L.L.P., Boston, Massachusetts, appeared for and on behalf of the Defendant Boat Dealers' Alliance, Inc.

---

## INTRODUCTION

The parties dispute the terms of the Confidential Long-Term Management Agreement (the "Agreement"). Plaintiff Patrick T. Manion, Jr. ("Plaintiff") asserts claims against Defendants Boat Dealers' Alliance, Inc. ("BDA"), Stephen E. Nagin ("Nagin"), Nagin, Gallop, Figueredo, P.A., Herzfeld & Rubin and Herzfeld & Rubin, P.C. (collectively, the "Nagin Law Firms"), and Litchford & Christopher, P.A. ("L & C").

AUG 0 2 2000
FILED
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

On June 14, 2000, oral argument was heard on: (1) Plaintiff's prayer for declaratory relief as to the Agreement's terms [Doc. No. 32]; (2) Plaintiff's request for injunctive relief to reinstate Plaintiff's discontinued salary and benefits [Doc. No. 32]; (3) the motion of Nagin and the Nagin Law Firms to dismiss or, in the alternative, to stay proceedings pending arbitration between Plaintiff and BDA [Doc. Nos. 21 and 47 (Joinder)]; (4) L & C's motion to dismiss for lack of personal jurisdiction [Doc. No. 48]; and (5) BDA's motion to dismiss, and to compel arbitration [Doc. No. 26].

## DISCUSSION

### I. MOTION TO COMPEL ARBITRATION

#### A. Arbitration Clause

Plaintiff and BDA entered into the Agreement on or about March 17, 1996. The Agreement has an arbitration clause that reads:

> In the event that *any dispute arises with respect to the interpretation*, execution, or enforcement of this Agreement, the same shall be submitted to binding arbitration either in St. Cloud, Minnesota, or Miami, Florida (whichever location is preferable to the party which files first), pursuant to the then current commercial arbitration rules of the American Arbitration Association, but subject to the understanding that each party may take up to three depositions, and that the arbitrator(s) shall issue complete findings of fact in addition to an award. *The power conferred by this paragraph is without prejudice to the right of a party under applicable law to request interim relief directly from any court, tribunal, or other governmental authority of competent jurisdiction, and to do so without prior authorization of the arbitrator(s).* Such a request for interim relief neither shall be deemed incompatible with, nor a waiver of, the requirement of arbitration of disputes.

Agreement at 9C (emphasis added). On February 13, 1999, BDA terminated the Agreement with Plaintiff. See Compl. ¶ 89.

On February 1, 2000, Plaintiff filed a complaint in the United States District Court for the District of Minnesota. Also on or about February 1, 2000, Plaintiff filed a Demand for Arbitration with the American Arbitration Association (the "AAA"). Arbitration proceedings have been stayed pending resolution of the motions presently before this Court.

**B. Arbitrability**

The effect of the Federal Arbitration Act (the "FAA") "is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [FAA]." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). The FAA provides for both a stay of litigation raising arbitrable issues and an affirmative order to compel arbitration to enforce arbitration agreements. See 9 U.S.C. §§ 3, 4.[1]

Federal law applies when determining the substantive issues of arbitrability, the allocation of review authority between courts and arbitrators over a dispute. See Gen. Mills, Inc. v. Hunt-Wesson, Inc., 889 F. Supp. 1119, 1122 n.4 (D. Minn. 1995). Because the FAA's "substantive law controls in either state or federal court . . . traditional choice of law principles in diversity actions are not available when [the FAA] applies to the case." Sanders-Midwest, Inc. v. Midwest Pipe Fabricators, Inc., 857 F.2d 1235, 1237 (8th Cir. 1988) (citations omitted).

Arguing that Florida law determines whether the present claims against BDA are arbitrable, Plaintiff cites the Agreement's general choice-of-law provision: "This Agreement shall be construed and interpreted in accordance with the laws of the State of Florida." Agreement at 9B. Under the present facts, state law, however, does not govern this Court's

---

[1] Accordingly, BDA's motion to dismiss and to compel arbitration will be construed as a motion to stay the present action, pending arbitration.

determination of arbitrability. Ackerberg v. Johnson, 892 F.2d 1328, 1334 (8th Cir. 1989) determined:

> Volt [Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989)] thus holds that the parties to an arbitration agreement can agree that state rules concerning arbitration will govern their proceedings. It clearly *does not hold* that state law can determine whether any given claim is arbitrable under the [FAA].

(Emphasis added). Instead, "[s]tate law is applicable to the arbitrability dispute if that law arose to govern issues concerning the validity, revocability or enforceability of contracts generally." Houlihan v. Offerman & Co., Inc., 31 F.3d 692, 696 n.3 (8th Cir. 1994). Accordingly, Florida law does not govern the determination of arbitrability here.

Through the FAA, Congress expressed a policy favoring "rapid and unobstructed enforcement of arbitration agreements." Moses H. Cone, 460 U.S. at 23. Courts generally recognize a presumption in favor of arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Telectronics Pacing Sys., Inc. v. Guidant Corp., 143 F.3d 428, 433 (8th Cir. 1998) (citing AT & T Tech., Inc. v. Communications Workers of Am., 475 U.S. 643, 650 (1986)). Before Plaintiff may be compelled to arbitrate under the FAA, this Court must engage in a limited inquiry of, first, whether a valid agreement to arbitrate exists between Plaintiff and BDA and, second, whether the present dispute falls within the scope of that agreement. See Houlihan, 31 F.3d 692 at 694-95. As the parties do not dispute the validity of the arbitration clause, the analysis here will focus solely on whether the claims asserted by Plaintiff fall within the scope of the arbitration clause.

The Complaint seeks against BDA (1) declaratory judgment interpreting the term "anniversary date" in the Agreement [Count I] and (2) a preliminary injunction requiring compliance by BDA with the terms of the Agreement [Count I]. Plaintiff claims damages for breach of contract against BDA *or, in the alternative*, a judgment against Nagin and the Defendant law firms [Count II]. Plaintiff also asserts breach of fiduciary duty [Count III] and interference of contract [Count IV] claims against Nagin.

The Statement of Claim (the "Statement") filed with the AAA asserts:

> [P]laintiff was damaged *either by BDA's breach of the Management Agreement, by Nagin's negligence in drafting it, or by Nagin's interference with [Plaintiff]'s rights under it, or by a combination of actions*, in an amount of at least $1,500,000 for each of the seventeen years remaining on his Management Agreement.

Batzli Aff., Ex. B at 3 (emphasis added). In the Statement, as in the Complaint, Plaintiff recites the circumstances surrounding the drafting of the Agreement, Plaintiff's termination, and the Eighth Circuit's ruling on the terms of another contract drafted by Nagin. See id. at 1-2.

Despite the similarities between the damages sought pursuant to the Claim and the Complaint, Plaintiff attempts to draw a distinction between contract *construction*, allegedly reserved for the Court, and contract *interpretation*, allegedly reserved for the arbitrator. See Pl.'s Opp. Mot. Compel at 3. Plaintiff relies on (1) the general choice-of-law clause that provides that the Agreement be "*construed and interpreted* in accordance with the laws of the State of Florida" and (2) the arbitration clause that applies to "any dispute aris[ing] with respect to the *interpretation*, execution, or enforcement of this Agreement." Plaintiff's arguments are unpersuasive.

First, as discussed above, parties may not rely on a general choice-of-law clause to undermine the federal substantive law of arbitrability. Second, the presumption of arbitrability prevails when an arbitration clause contains no clear, exclusionary language and when the arbitration clause is particularly broad. See AT&T Tech., 475 U.S. at 650; United Steelworkers of Am. v. Titan Tire Corp., 204 F.3d 858, 861 (8th Cir. 2000). Generally, courts characterize arbitration clauses containing the "any dispute arising out of" language as broad:

> The presumption is particularly applicable where the clause is as broad as the one employed in this case, which provides for arbitration of "*any differences arising with respect to the interpretation of this contract* or the performance of any obligation hereunder . . . ."

AT&T Tech., 475 U.S. at 650 (citing Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 584-85 (1960)). See also Mar-Len of La., Inc. v. Parsons-Gilbane, 773 F.2d 633, 634 (5th Cir. 1985) ("any dispute . . . with respect to the interpretation or performance" of the contract considered particularly broad). In the present case, the arbitration clause is sufficiently broad to encompass the *construction* of the Agreement's terms. Moreover, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, [even if] the problem at hand is the construction of the contract language itself . . . ." See Lakehead Pipe Line Co., Inc. v. American Home Assurance Co., 981 F. Supp. 1205, 1217 (D. Minn. 1997) (quoting Moses H. Cone, 460 U.S. at 24-25). As succinctly stated by the Seventh Circuit:

> We find, however, that "arising out of" reaches all disputes having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se . . . In fact, any dispute between contracting parties that is in any way connected with their contract could be said to "arise out of" their agreement and thus be subject to arbitration under a provision employing this language. At the very least, an "arising out of" arbitration clause would arguably

> cover such disputes, and, under our cases, this is all that is needed to trigger arbitration.

Sweet Dreams Unlimited v. Dial-A-Mattress Int'l, Ltd., 1 F.3d 639, 642 (7th Cir. 1993) *cited with approval in* Simitar Entertainment, Inc. v. Silva Entertainment, Inc., 44 F. Supp.2d 986, 995-96 (D. Minn. 1999). The interpretation and construction of the Agreement's terms are arbitrable issues. Plaintiff's request for declaratory relief is denied.

## II. PRELIMINARY INJUNCTION

Plaintiff also seeks injunctive relief directing BDA to pay Plaintiff "the compensation and other benefits due under the Agreement" that were discontinued in February 1999 upon Plaintiff's termination. See Pl.'s Mem. Supp. Prelim. Inj. at 6; Compl. ¶ 89. Where the claims asserted are arbitrable, preliminary injunction is inappropriate, absent qualifying contractual language. See, e.g., Peabody Coalsales Co. v. Tampa Elec. Co., 36 F.3d 46, 47 (8th Cir. 1994). The Eighth Circuit has held that:

> [i]n light of our determination that the controversy is arbitrable, however, we find that the issuance of injunctive relief abrogates the intent of the [FAA] and consequently [to do so is] an abuse of discretion. . . . The parties have not alleged that the contract provides for or contemplates injunctive relief along the lines granted [by the district court].

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hovey, 726 F.2d 1286, 1291 (8th Cir. 1984).

Plaintiff must show that the Agreement contemplates the requested relief through qualifying contractual language. See Peabody Coalsales, 36 F.3d at 47. "Qualifying contractual language" means "language which provides the court with clear grounds to grant relief *without addressing the merits* of the underlying dispute." Id. at 47-48 & n.3 (emphasis added). This definition is guided by the "unmistakably clear congressional purpose" to avoid delaying

arbitration in courts. Id. at 48.

In Peabody, the agreement provided that "[u]nless otherwise agreed in writing by Buyer and Seller, performance of their respective obligations and this agreement shall be continued during the dispute resolution process. . . ." Id. at 47. The Eighth Circuit clarified that

> [w]here, as here, the contract clearly requires *continued performance* during the arbitration process, the judicial inquiry is limited and arbitration under the contract terms will not be delayed. The court need only read the contract and order arbitration according to its provisions. Such an inquiry does not implicate Hovey's concern with becoming entangled in the merits of the underlying dispute.

Id. at 48 (emphasis added). In the instant case, Plaintiff has not received a salary or benefits since his termination in February 1999; thus there is currently no "status quo" of salary payment to preserve. Additionally, the Agreement has no qualifying contractual language providing for BDA's continued performance during the course of the arbitration. To assess Plaintiff's request for injunctive relief requires construing and interpreting the Agreement. Such an inquiry necessarily requires entanglement in the merits of the underlying dispute.

Finally, the general injunctive relief clause provides that "either party is entitled to injunctive relief in case of any breach as well as other relief available via law or equity." Agreement at 9A. The clause does not relegate injunctive relief solely to the courts.

## III. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### A. Background

In 1995, Plaintiff retained Nagin's former law firm, Herzfeld & Rubin, to incorporate BDA. See Pl.'s Opp. to Mot. Dismiss at 3. Nagin has been BDA's General Counsel since 1995, when Plaintiff was Executive Director. Plaintiff was terminated in February 1999. See Nagin

Decl. ¶ 2; Compl. ¶ 3. The parties dispute whether Nagin ever represented Plaintiff personally.

L & C is a Florida professional association engaged in the practice of law, with its principal place of business in Orlando, Florida. See Litchford Aff. ¶ 2. Nagin, the attorney who drafted the Agreement, joined L & C on May 3, 1996 and remained until August 1, 1997.

Plaintiff has not specifically pleaded any of the four Counts against L & C. Counts I and II relate to the Agreement, entered into by Plaintiff and BDA on or around March 17, 1996. Counts III, IV, and V allege Nagin's breach of fiduciary duty, negligence, and interference of contract, all based on Nagin's drafting of the Agreement. Plaintiff now maintains that L & C is liable for damages to Plaintiff under theories of respondeat superior and vicarious liability. Plaintiff simply concludes that "[a]s long as Nagin himself is subject to this Court's exercise of personal jurisdiction, the Litchford & Christopher law firm is also." Pl.'s Mem. Opp. at 6.

Plaintiff has not set forth the underlying basis for asserting respondeat superior and vicarious liability theories. The Court assumes Plaintiff is advancing an agency theory of liability, whereby Nagin, as an agent, allegedly acted on behalf of L & C, the principal. "It is true that the forum-related activities of an agent are imputable to the principal and may be counted as the principal's contacts for jurisdictional purposes." NFD, Inc. v. Stratford Leasing Co., 433 N.W.2d 905, 910 (Minn. Ct. App. 1989).

**B. Assessing Personal Jurisdiction**

L & C argues that this Court may not properly exercise personal jurisdiction over L & C. In response, Plaintiff need only submit evidence that, when viewed in the light most favorable to Plaintiff, establishes a prima facie case of personal jurisdiction. See Aero Sys. Eng'g, Inc. v. Opron, Inc., 21 F. Supp.2d 990, 995 (D. Minn. 1998). Plaintiff asserts that this Court has

specific, as opposed to general, jurisdiction over L & C. Specific jurisdiction is conferred "when a controversy is related to or arises out of a defendant's contacts with the forum, and there is a relationship among the defendant, the forum, and the litigation." Minnesota Mining & Mfg. Co. v. Nippon Carbide Indus. Co., Inc., 63 F.3d 694, 697 (8th Cir. 1995).

Generally, two independent inquiries inform an assessment of personal jurisdiction: (1) whether the applicable state long-arm statute, Minn. Stat. § 543.19, is satisfied, and (2) whether this Court's exercise of jurisdiction is consistent with the requisites of due process. See Minnesota Mining, 63 F.3d at 696-97. The Eighth Circuit has recognized, however, that Minnesota has interpreted its long-arm statute to be coextensive with the limits of due process. See id. at 697. Accordingly, the present analysis collapses the two inquiries, focusing solely on whether exercising personal jurisdiction over L & C comports with federal due process. See id.

A court properly exercises personal jurisdiction over a nonresident defendant when the defendant has sufficient minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citations omitted). Sufficient contacts exist when "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). A finding of reasonable anticipation requires that there be "some act by which the defendant purposefully avails itself of the privileges of conducting activities within the forum state, thus invoking the benefits and protection of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

The Eighth Circuit applies a five-factor test in analyzing the constitutional requirements

needed for personal jurisdiction: (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum; (3) the relation of the cause of action to these contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. See Wessels, Arnold & Henderson v. Nat'l Med. Waste, 65 F.3d 1427, 1435 (8th Cir. 1995); see also Rostad v. On-Deck, Inc., 372 N.W.2d 717, 719 (Minn. 1985). "The first three factors are of primary importance, and the last two are 'secondary factors.'" Digi-Tel, 89 F.3d at 523 (quoting Minnesota Mining, 63 F.3d at 697). The first three factors, examining the nature, quantity, and quality of a defendant's contacts with Minnesota and its relationship to a plaintiff's causes of action, are "closely interrelated" and may be considered together. See Northrup King v. Compania Productora Semillas Algodoneras Selectas, S.A., 51 F.3d 1383, 1388 (8th Cir. 1995). Specifically, to satisfy the constitutional dimension of personal jurisdiction, Plaintiff must show that claims asserted against L & C relate to or arise out of L & C's contacts with Minnesota between May 3, 1996 and August 1, 1997, the period of Nagin's tenure with L & C.

Plaintiff alleges two types of contacts with Minnesota that occurred between May 3, 1996 and August 1, 1997: (1) 115 telephone contacts and 37 written communications between Nagin and Minnesota and (2) Nagin's visit to St. Cloud, Minnesota in July 1997 to discuss billing issues with Plaintiff. See Snipe Aff. ¶ 4, citing Litchford Aff., Ex. K. Although the quantity of contacts may favor Plaintiff, their nature and quality weigh in favor of L & C.

A Florida entity, L & C has never maintained offices in Minnesota, been licensed to practice in Minnesota, or solicited business in Minnesota. None of L & C's attorneys, including Nagin, has ever lived in Minnesota or been licensed to practice law in Minnesota. L & C did not

actively seek Plaintiff as a client. On April 29, 1996, Nagin informed Plaintiff that Nagin planned to leave Herzfeld & Rubin to practice with L & C, effective May 3, 1996. See Compl. ¶ 61. Plaintiff elected to continue Nagin's representation. See id. at 62.

As alleged, the correspondence and telephone calls "alone are insufficient to confer personal jurisdiction, but remain a consideration in determining" the nature and quality of these contacts; in other words, "whether the defendant purposely availed [itself] of the privilege of doing business in Minnesota." Wessels, 65 F.3d at 1433 (addressing mail and telephone contacts). Additionally, according to Plaintiff, Nagin visited Plaintiff in St. Cloud, Minnesota, some time between July 12 and 18, 1997 "for the purpose of collecting the amount billed for legal services through the [L & C] law firm." Manion Aff. at ¶¶ 3-4; Rothe Aff. at ¶ 3. Plaintiff was not billed for this visit. See Litchford Aff., Ex. K.

The Eighth Circuit has directly addressed personal jurisdiction where an attorney-client relationship is alleged. See Austad Co. v. Pennie & Edmonds, 823 F.2d 223 (8th Cir. 1987). In Austad, a New York firm represented a South Dakota client in a Maryland-based litigation. See id. at 224-25. During the course of representation, the contacts between the firm and South Dakota included numerous phone calls, mailings, and three days of discovery in South Dakota by a lawyer from the firm. See id. The client later sued the firm for malpractice in South Dakota.

The Eighth Circuit concluded that the law firm's contacts with the forum were insufficient to satisfy the "purposeful availment" requirement. See id. at 226-27. Under Austad, communications between a nonresident law firm and a client are necessary incidents of the attorney-client relationship. Thus, "to be subject to personal jurisdiction, an out-of-state lawyer must do more than merely communicate with persons in the forum state at the client's behest."

Nash Finch Co. v. Preston, 867 F. Supp. 866, 868 (D. Minn. 1994) (citing Sher v. Johnson, 911 F.2d 1357, 1363 (9th Cir. 1990)).

Furthermore, the relation of the cause of action to the asserted contacts is tenuous, and favors L & C. Plaintiff alleges damages resulting from "either BDA's breach of the Management Agreement, by Nagin's negligence in drafting it, or by Nagin's interference with [Plaintiff]'s rights under it . . . ." Compl. ¶ 107. The drafting of the Agreement is at the heart of this dispute. The Agreement was drafted in Florida in March 1996, before Nagin joined L & C. One isolated contact to discuss fees owed is insufficient to show that L & C purposefully availed itself of the benefits and protection of Minnesota law.[2]

Finally, the less significant fourth and fifth factors, Minnesota's interest in providing a forum for its residents and the convenience of the parties also favor L & C. While Minnesota undoubtedly has an interest in providing a forum for its citizens, most of the witnesses are in Florida and Florida law of malpractice will apply to the merits of the case. See Nash Finch, 867 F. Supp. at 869. The factors relied upon in assessing personal jurisdiction weigh against Minnesota jurisdiction.

---

[2] In or around April 1997, L & C sued or threatened to sue BDA for fees owed in the Circuit Court for the Ninth Judicial District of Orange County, Florida. See Olson Aff., Ex. 3. The parties settled the dispute in September 1997. L & C invoked the benefits and protections of Florida law.

## IV. MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY THE PROCEEDINGS

Plaintiff seeks damages for breach of contract against BDA *or, in the alternative*, a judgment against Nagin and the Defendant law firms. The arbitrable claims, as determined above, against BDA must be stayed pursuant to 9 U.S.C. § 3. As alleged, Plaintiff's claims against BDA predominate this case. The outcome of the arbitration may affect the determination of the claims against Nagin and the Defendant law firms. Thus, all surviving claims will be stayed pending arbitration.

## CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Boat Dealers' Alliance, Inc.'s motion to compel arbitration [Doc. No. 26] is **GRANTED**;
2. Plaintiff's Motions for Declaratory Relief and Preliminary Injunction [Doc. No. 32] are **DENIED**;
3. Defendant Litchford & Christopher, P.A.'s motion to dismiss for lack of personal jurisdiction [Doc. No. 48] is **GRANTED**; and
4. The motion of Defendants Stephen E. Nagin, Nagin, Gallop, Figueredo, P.A., Herzfeld & Rubin and Herzfeld & Rubin, P.C. to stay the proceeding pending arbitration [Doc. Nos. 21 and 47] between Plaintiff and Defendant Boat Dealers' Alliance, Inc. is **GRANTED**.

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Dated: August 2, 2000