**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Patrick T. Manion, Jr.,

Plaintiff,

v.

Stephen E. Nagin, Herzfeld & Rubin, Herzfeld & Rubin, P.C., Nagin Gallop Figueredo, P.A., and Boat Dealers' Alliance, Inc.,

Defendants.

**MEMORANDUM OPINION AND ORDER**
Civil No. 00-238 ADM/RLE

---

Patrick T. Manion, Jr. and Nancy Manion,

Plaintiffs,

v.

Alex Stirling et al.,

Defendants.

**MEMORANDUM OPINION AND ORDER**
Civil No. 02-370 ADM/RLE

---

William J. French, Esq., Conant French & Chaney, L.L.P., Dallas, TX, and Martin A. Carlson, Esq., Lockridge Grindal Nauen P.L.L.P., Minneapolis, MN, appeared for and on behalf of Plaintiff Patrick T. Manion, Jr.

Matthew M. Meyer, Esq., Moss & Barnett, Minneapolis, MN, appeared for and on behalf of Defendants Stephen E. Nagin, Herzfeld & Rubin, Herzfeld & Rubin, P.C., and Nagin Gallop Figueredo, P.A.

Richard J. Nygaard, Esq., and John J. Wackman, Esq., Rider Bennett, L.L.P., Minneapolis, MN, appeared for and on behalf of Defendants Boat Dealers' Alliance, William G. Schaeffer, Boats, Inc., Brian Olson, Donald C. Mackenzie, MarineOne Corp., Tony Lumpkin, Custom Fiberglass Manufacturers, Inc., Frank Franklin, Killinger Marine Center, Inc., Douglass Killinger, Phil Dill Boats, Inc., Phil Dill, Jr., Port Harbor Marine, Inc., Robert Soucy, Russo's Marine Mart, Inc., Lawrence J. Russo, Sr., Summerville Marine, Inc., Cleveland Wilson, Texas Marine &

FILED FEB - 5 2004
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD FEB - 5 2004
DEPUTY CLERK

Brokerage, Inc., Texas Marine of Houston, Inc., Texas Marine of Clear Lake, Inc., and Michael Hebert.

Stephen L. Wilson, Esq., Foley & Mansfield, P.L.L.P., Minneapolis, MN, appeared for and on behalf of Defendants Alex Stirling, Bruce Marine, Inc., Bruce Crowder, Tom Crowder, Cope Auto & Marine, Inc., Kenneth Cope, Counce Marine, Inc., Tandy Counce, "Just Add Water" Boats, Inc., Tim Meyer, Norris Marine Ltd., and Tom Stidham.

Mark R. Azman, Esq., Johnson & Condon, P.A., Minneapolis, MN, appeared for and on behalf of Defendants Crocker's Marine Inc., Crocker & Co. L.L.C., Morehead Marine Inc., Newland Kay Crocker, and Terry G. Wilder.

---

## I. INTRODUCTION

The Renewed Motion to Dismiss ['238 Docket No. 148] of Defendants Stephen E. Nagin ("Nagin"), Herzfeld & Rubin, Herzfeld & Rubin, P.C., and Nagin Gallop Figueredo, P.A. (collectively, "the '238 Defendants") was argued before the undersigned United States District Judge on December 11, 2003.[1] The Court also heard the '238 Defendants' Motion to Dismiss Boat Dealers' Alliance, Inc.'s ("BDA") Cross-Claim ['238 Docket No. 139], BDA's Motion for an Award of Attorneys' Fees ['238 Docket No. 113], and Motion for Sanctions ['238 Docket No. 116]. Additionally, certain Defendants from the '370 action ("the '370 Defendants") moved for attorneys' fees [Docket Nos. 110, 113] and for sanctions [Docket Nos. 104, 108]. For the reasons explained below, the '238 Defendants' Renewed Motion to Dismiss is granted, the '238 Defendants' Motion to Dismiss BDA's Cross-Claim is granted, BDA's Motion for Attorneys' Fees is granted in part and denied in part, the '370 Defendants' Motion for Attorneys' Fees is

---

[1] The '238 Defendants' Renewed Motion to Dismiss supplements Defendants Nagin's and Nagin Gallop Figueredo, P.A.'s initial Motion to Dismiss or to Stay Proceedings [Docket No. 21], which was joined by Defendants Herzfeld & Rubin and Herzfeld & Rubin, P.C. [Docket No. 47]. In addition to the arguments set forth in their Renewed Motion to Dismiss, Defendants also reiterate arguments made in their first dismissal motion.

denied, and BDA's and the '370 Defendants' Motions for Sanctions are denied.

## II. BACKGROUND

In the spring of 1995, Plaintiff Patrick T. Manion, Jr. ("Manion" or "Plaintiff") hired Nagin, an attorney, to organize and incorporate BDA. See '238 Compl. ¶¶ 3, 22-23. Nagin filed BDA's articles of incorporation, wrote its by-laws, prepared a management agreement concerning Manion's position as BDA's executive director ("Management Agreement"), and drafted BDA's contract with the Outboard Marine Corporation ("OMC Contract"). See id. ¶¶ 35, 39, 47-49, 66-72. Nagin also wrote a stock redemption agreement concerning Manion's shares of preferred stock in BDA. Id. ¶ 85.

This litigation results from BDA's termination of Manion as its executive director at an emergency shareholders meeting held in February 1999. Id. ¶ 89. Manion filed suit against the '238 Defendants on February 1, 2000, alleging that his termination was improper and asserting claims for breach of fiduciary duty, negligence, and interference with contract.[2] See id. ¶¶ 116-127. Manion sued BDA for breach of contract, and subsequently filed a second lawsuit against individual members of BDA. Id. ¶¶ 112-115; see '370 Compl. ['370 Docket No. 1]; '370 Am. Compl. ['370 Docket No. 41]. In the '238 litigation, BDA filed a Cross-Claim against the '238 Defendants ['238 Docket Nos. 88, 111], alleging professional malpractice in Nagin's legal representation of BDA.

This Court granted BDA's motion to compel arbitration in its August 2, 2000 Order ['238

[2] In their Renewed Motion to Dismiss, the '238 Defendants state that Manion also asserts a breach of contract claim against them. However, Manion's Complaint alleges this claim against BDA only. Therefore, the Court does not address the'238 Defendants' breach of contract arguments in this Order.

Docket No. 68]. The arbitration hearing was held in Minneapolis, Minnesota, from May 29 to June 7, 2002, and Arbitrator Richard Pemberton ("Arbitratror") issued his Findings of Fact, Conclusions of Law and Interim Arbitration Award ("Interim Award") on November 12, 2002. See Wackman Aff. Ex. 2.[3] The Arbitrator determined that "Manion engaged in bad faith and in grossly negligent conduct" by (1) failing to deduct operating expenses when making dividend payments to BDA's members, (2) failing to deduct operating expenses in calculating his own compensation, and (3) withholding financial information in his possession that would have revealed his bad faith. Interim Award at 8-12. Based on these findings of fact in his Interim Award, the Arbitrator concluded "adequate justification for BDA's [terminating Manion] exists," and Manion's breach of contract claim was denied. Id. at 12, 21. The Arbitrator also held that Manion owned 90 shares of preferred stock in BDA, and found that such stock had never been converted to BDA ownership. Id. at 12, 21-22. On February 21, 2003, the Arbitrator issued his Final Award, fully incorporating these findings of fact from the Interim Award (collectively, the "Awards"). See Wackman Aff. Ex. 6. The Arbitrator found that BDA was the prevailing party on the "most significant issue of the arbitration." Final Award at 6-7.

Based on the Awards and findings from the arbitration, the Court dismissed all claims asserted against BDA. See Order of 6/20/03 ['238 Docket No. 108]; Supplemental Order of 7/21/03 ['238 Docket No. 123]. The '370 case was dismissed in an Order dated June 20, 2003. ['370 Docket No. 100]. Consequently, only the direct claims and cross-claims against the '238 Defendants remain.

---

[3] As there are multiple "Wackman Affidavits" of record, all citations herein to a Wackman Affidavit, unless indicated otherwise, refer to the affidavit filed April 29, 2003 ['238 Docket No. 103].

## III. DISCUSSION

The '238 Defendants move to dismiss both Manion's Complaint and BDA's Cross-Claims.

### A. The '238 Defendants' Renewed Motion to Dismiss

The '238 Defendants argue that Manion's Complaint should be dismissed based on the combined grounds of failure to state cognizable claims and collateral estoppel. Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a party may move to dismiss claims for failure to state a claim upon which relief can be granted. In considering a motion to dismiss, courts must construe the pleadings in the light most favorable to the nonmoving party and view the facts alleged in the complaint as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994); Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993). Courts should resolve any ambiguities concerning the sufficiency of the claims in favor of the nonmoving party, and dismiss claims "only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations." Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995) (citations omitted); see Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir. 1996); Ossman, 825 F. Supp. at 880.

The '238 Defendants assert that Manion's claims for negligence and breach of fiduciary duty must be dismissed under Rule 12(b)(6). First, they argue that Manion has not stated claims for malpractice and breach of fiduciary duty because he has failed the threshold showing that Nagin owed him a duty as his personal attorney. To pursue a legal malpractice claim under

Minnesota law,[4] the plaintiff must first prove that the defendant owed him a duty of care. See Togstad v. Vesely Otto Miller & Keefe, 291 N.W.2d 686, 692 (Minn. 1980). In Florida, attorneys' liability for professional negligence is limited to "clients with whom they share privity of contract," meaning that no duty of care arises here unless Nagin was employed as Manion's counsel. See Angel Cohen & Rogovin v. Oberon Inv., N.V., 512 So.2d 192, 194 (Fla. 1987); Brennan v. Ruffner, 640 So.2d 143, 145 (Fla. Dist. Ct. App. 1994). To support a claim for breach of fiduciary duty, the plaintiff must establish that the defendant was obligated to him as a fiduciary. See Gracey v. Eaker, 837 So.2d 348, 353 (Fla. 2002) (holding that the existence of a fiduciary duty is the first element in a breach of fiduciary duty claim); Padco, Inc. v. Kinney & Lange, 444 N.W.2d 889, 891 (Minn. Ct. App. 1989) (explaining that under Minnesota law elements in a claim for breach of fiduciary duty are the same as those in a negligence action).

Both a duty of care and a fiduciary duty arise from the creation of an attorney-client relationship, which in Minnesota may be formed under either a tort or contract theory. Gramling v. Mem'l Blood Ctrs., 601 N.W.2d 457, 459 (Minn. Ct. App. 1999). The contract theory holds that parties create an attorney-client relationship if they either explicitly or implicitly form a contract for legal services. Id. Under a tort theory of representation, an attorney-client relationship exists "whenever an individual seeks and receives legal advice from an attorney in circumstances in which a reasonable person would rely on such advice." Togstad, 291 N.W.2d at 693 n.3. An attorney-client relationship is created under Florida law when a client believes that

[4] The '238 parties dispute whether Minnesota or Florida law governs the merits of this litigation. Since both states have similar requirements of an attorney-client relationship prior to imposing a duty of care, the Court applies the law from both states in analyzing the '238 Defendants' Renewed Motion to Dismiss. Here, the choice of law decision has no effect on the outcome.

"he is consulting a lawyer in that capacity and his manifested intention is to seek professional legal advice." Fla. Bar v. Beach, 675 So.2d 106, 109 (Fla. 1996). However, the client's subjective beliefs about representation must be reasonable. Id. Whether an attorney-client relationship exists is a factual determination based on the circumstances of each case. Palafrugell Holdings, Inc. v. Cassel, 825 So.2d 937, 939-40 (Fla. Dist. Ct. App. 2001); Admiral Merchants Motor Freight, Inc. v. O'Connor & Hannan, 494 N.W.2d 261, 265 (Minn. 1992).

The attorney's representation of an organizational client such as BDA adds another layer to this inquiry. Because the organization itself is the client, attorneys hired to represent organizations owe a duty only to the entity and not to the organization's constituents.[5] See Fla. Rules of Prof'l Conduct R. 4-1.13; Minn. Rules of Prof'l Conduct R. 1.13. Case law from both Minnesota and Florida acknowledges the existence of this "entity rule" and stresses that "the attorney's allegiance is to the organization." See Humphrey v. McLaren, 402 N.W.2d 535, 540 (Minn. 1987); see also Brennan, 640 So.2d at 146. Consequently, the attorney should always act in the best interests of the entity even if such actions are potentially adverse to individual constituents. See Cmts. to Fla. Rules of Prof'l Conduct R. 4-1.13; Cmts. to Minn. Rules of Prof'l Conduct R. 1.13.

The entity rule applies retroactively when individuals hire attorneys to form corporations. While the Minnesota and Florida rules concerning organizational clients do not specifically discuss lawyers' duty to individuals who retain them to incorporate businesses, state rules of professional responsibility are generally designed to "enhance the corporate lawyer's ability to

---

[5] "Constituents" are the officers, directors, employees, and shareholders of the corporate organizational client. Cmts. to Fla. Rules of Prof'l Conduct R. 4-1.13; Cmts. to Minn. Rules of Prof'l Conduct R. 1.13.

represent the best interests of the corporation without automatically having the additional and potentially conflicting burden of representing the corporation's constituents." Jesse v. Danforth, 485 N.W.2d 63, 67 (Wis. 1992); Fla. Rules of Prof'l Conduct R. 4-1.13; Minn. Rules of Prof'l Conduct R. 1.13.[6] In situations where an individual hires an attorney to organize an entity, the entity rule's purpose would be defeated if the attorney were a priori deemed to represent both the individual and the organization. Therefore, the entity rule applies retroactively where a person "(1) retains a lawyer for the purpose of organizing an entity and (2) the lawyer's involvement with that person is directly related to that incorporation and (3) such entity is eventually incorporated . . . ." Jesse, 485 N.W.2d at 67. In these circumstances, "the lawyer's pre-incorporation involvement with the person is deemed to be representation of the entity, not the person." Id.

The allegations plead in the '238 Complaint do not support the position that Nagin represented Manion personally and owed him a duty of care and a fiduciary duty, but show instead that Nagin represented BDA only. Manion admits that Nagin was BDA's attorney, but claims that Nagin acted as his personal counsel as well. See '238 Compl. ¶ 26. However, the facts in the Complaint, even taken as true, reveal that Nagin's legal work involving Manion was solely for the benefit of BDA. Manion does not claim that Nagin performed non-BDA related work for him. Rather, Manion's stated purpose in hiring Nagin was to organize and incorporate BDA. See id. ¶¶ 3, 23, 25. Manion asserts that Nagin filed BDA's articles of incorporation,

---

[6] The Wisconsin Supreme Court Rule regarding a lawyer's duty to an organizational client is identical to the Minnesota and Florida rules for entity representation. See Wis. SCR 20:1.13; see also Fla. Rules of Prof'l Conduct R. 4-1.13; Minn. Rules of Prof'l Conduct R. 1.13.

wrote its by-laws, prepared the Management Agreement for Manion regarding Manion's position as BDA's executive director, and drafted BDA's contract with the Outboard Marine Corporation. See id. ¶¶ 35, 39, 47-49, 66-72. Nagin also drafted a stock redemption agreement concerning Manion's shares of preferred stock in BDA. Id. ¶ 85.

While Nagin clearly owed a duty to BDA in performing these tasks as BDA's attorney, under the entity rule he did not automatically owe a separate duty to Manion. This is true even though Manion hired him to incorporate BDA, paid him for these services, and retained Nagin's services after Nagin switched law firms. See Jesse, 485 N.W.2d at 67. Individuals cannot circumvent the entity rule's purposes by simply claiming that legal work related to corporate activities was undertaken for their benefit as constituents and not for the corporate entity. Id.; see also Brennan, 640 So.2d at 146; Humphrey, 402 N.W.2d at 540. Manion claims that he hired Nagin to represent him individually in "organizing, owning, and operating" BDA, but fails to explain how this legal work was completed for him personally. This failure eviscerates Manion's claim that he had an attorney-client relationship with Nagin, for even if Manion honestly believed that Nagin was acting as his attorney and not for BDA, his belief must be reasonable. Fla. Bar, 675 So.2d at 109; Togstad, 291 N.W.2d at 693 n.3. Consequently, Manion has not shown that Nagin owed him personally either a duty of care or a fiduciary duty. Therefore, the claims for breach of fiduciary duty and negligence against the '238 Defendants must be dismissed with prejudice.

The '238 Defendants also argue that collateral estoppel bars some of Manion's negligence claims and Manion's claim for tortious interference with contract. Collateral estoppel, or issue preclusion, is appropriate when: "(1) the issue sought to be precluded is identical to the issue

previously decided; (2) the prior action resulted in a final adjudication on the merits; (3) the party sought to be estopped was either a party or in privity with a party to the prior action; and (4) the party sought to be estopped was given a full and fair opportunity to be heard on the issue in the prior action." Wellons, Inc. v. T.E. Ibberson, Co., 869 F.2d 1166, 1168 (8th Cir. 1989).

Application of this standard to the Arbitrator's findings precludes Manion from now contesting the basis of his termination or ownership of the preferred shares. First, some of Manion's negligence claims and his interference with contract claim against Nagin rely on Manion's assertion that his termination was unfounded and that BDA improperly converted his shares of preferred stock. These issues were adjudicated during the arbitration and the Arbitrator found that Manion's bad faith conduct justified his termination and that he owned the stock. Interim Award at 12, 21-22, Wackman Aff. Ex. 2. Second, an arbitration award is a final adjudication on the merits. See Wellons, 869 F.2d at 1168. Third, Manion was a party in the arbitration proceedings and was given a full opportunity to express his views about his termination and ownership of the preferred shares. Therefore, Manion is estopped from asserting that there was no basis for his termination or that he lost control of his BDA stock.

Applying collateral estoppel to Manion's specific allegations, the Court must dismiss any negligence or tortious interference claims that rely on facts contrary to the Arbitrator's findings. The basic elements in a legal malpractice claim under Minnesota and Florida law include: (1) the existence of an attorney-client relationship or duty; (2) negligent conduct by the attorney, and; (3) damage to the client resulting from such conduct. See Togstad, 291 N.W.2d 686 at 692; see also Kates v. Robinson, 786 So.2d 61, 64 (Fla. Dist. Ct. App. 2001). The elements in a tortious interference claim are: (1) the existence of a contract; (2) the alleged wrongdoer's knowledge of

the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages. See Furlev Sales & Assocs., Inc. v. N. Am. Auto., Inc., 325 N.W.2d 20, 25 (Minn. 1982); see also McDonald v. McGowan, 402 So.2d 1197, 1201 (Fla. Dist. Ct. App. 1981). To support his claims, Manion asserts that Nagin negligently limited his ability to control BDA, acted inappropriately regarding Manion's stock and dividends, and improperly interfered with his rights under the Management Agreement. See '238 Compl. ¶¶ 27-34, 42- 44, 63-65, 89-100, 103-06, 120-27. However, because the Arbitrator determined that Manion retained his preferred shares and was not damaged, Manion may not assert malpractice claims based on Nagin's alleged negligence regarding the stock certificates. Concerning his tortious interference claim, Manion may not litigate his claim that Nagin lacked justification for procuring a breach of the Management Agreement, even assuming Nagin convinced BDA to fire Manion, because Manion was found to have acted in bad faith while employed at BDA. Nagin's position as BDA's attorney required him to protect BDA's interests, and BDA possessed legitimate reasons for terminating Manion. Consequently, the justification element of his tortious interference claim is negated by the Arbitrator's finding. Therefore, Manion's negligence claims related to his loss of stock and his claim for interference with contract are dismissed with prejudice.[7]

The '238 Defendants' final argument supporting dismissal is premised upon Plaintiff's failure to comply with Minnesota's expert affidavit requirement. A claim for legal malpractice in Minnesota may not proceed unless the plaintiff files an affidavit from an expert identifying the

---

[7] The '238 Defendants also argue that collateral estoppel precludes any malpractice claims based on Nagin's allegedly negligent drafting of the Management Agreement. However, because it is arguable that the negligence resulted from Nagin's failure to draft an agreement that prohibited his termination under any circumstances, collateral estoppel does not bar all of Plaintiff's malpractice claims.

reasons the defendant attorney's conduct was negligent. See Minn. Stat. § 544.42. The penalty for noncompliance is mandatory dismissal unless the plaintiff attempted to follow the statute but somehow filed a deficient affidavit. Id. Because Manion filed no expert affidavit under § 544.42 Subdivision 4, the '238 Defendants assert that his claim is frivolous and must be dismissed. See House v. Kelbel, 105 F. Supp. 2d 1045, 1050-54 (D. Minn. 2000) (holding that the court must dismiss malpractice claims as frivolous when the plaintiff does not file expert affidavit as required by § 544.42); see also Sorenson v. St. Paul Ramsey Med. Ctr., 457 N.W.2d 188, 191 (Minn. 1990) (holding as frivolous per se a medical malpractice action where the plaintiff did not comply with Minn. Stat. § 145.682, a provision with requirements almost identical to those in § 544.42).

Plaintiff counters that compliance with the Minnesota expert affidavit requirement is unnecessary for two reasons. First, assuming that the requirement is procedural, Erie and its progeny bar the statute's application to Plaintiff's case because federal courts sitting in diversity apply state substantive law and federal procedural law. See Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); see also Hanna v. Plumer, 380 U.S. 460, 465-66 (1965). Second, Plaintiff asserts that the requirement is not applicable even if the Minnesota statute is substantive under Erie because, in Plaintiff's view, Florida law governs the merits of this case.

While the applicability of Minnesota Statute § 544.42 need not be reached in light of the dismissal on other grounds, Plaintiff's argument will be addressed. Section 544.42 is arguably substantive under Erie because it does not directly conflict with a Federal Rule of Civil Procedure and its application would significantly affect the outcome of this litigation. See Hanna, 380 U.S. at 471; see also Guaranty Trust Co. v. York, 326 U.S. 99, 109 (1945). Further,

other judges in this district have applied Minnesota state law expert affidavit requirements to diversity cases and held that such provisions are substantive. See Ellingson v. Walgreen Co., 78 F. Supp. 2d 965, 968-69 (D. Minn. 1999) (Rosenbaum, J.); Oslund v. United States, 701 F. Supp. 710, 714 (D. Minn. 1988) (Murphy, J.). Though Plaintiff contends that dicta from the August 2, 2000 Order determined that Florida law controls the case, the Court has not directly ruled on choice of law issues concerning this litigation. Therefore, Plaintiff's failure to comply with § 544.42 presents an additional basis for dismissal.

In summary, Plaintiff's claims against the '238 Defendants for breach of fiduciary duty, negligence, and interference with contract are dismissed with prejudice because Plaintiff has not shown that he had an attorney-client relationship with Nagin, that he suffered damages concerning his shares of preferred stock, and that Nagin lacked justification for counseling BDA to terminate Plaintiff's employment.

**B. The '238 Defendants' Motion to Dismiss BDA's Cross-Claims**

The '238 Defendants also move to dismiss BDA's Cross-Claims. Among the many arguments the '238 Defendants offer supporting their Motion is the assumption that the Court should decline to exercise supplemental jurisdiction over BDA's Cross-Claims. In civil actions where federal district courts have original jurisdiction, they may also exercise supplemental jurisdiction over claims that form part of the same case or controversy as the original claims. 28 U.S.C. § 1367(a). However, courts may decline to exercise supplemental jurisdiction under the following circumstances: (1) the claim raises novel or complex issues of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction;

or (4) in exceptional circumstances, there are other reasons for declining jurisdiction. See id. § 1367(c).

The Court declines to exercise supplemental jurisdiction over BDA's Cross-Claims based on the third exception delineated in § 1367(c). Because this Order dismisses Plaintiff's claims against the '238 Defendants, all claims over which the Court had original jurisdiction have been dismissed. State court is a more appropriate forum for BDA's Cross-Claims, as BDA and the '238 Defendants lack diversity and BDA only asserts state law claims. See BDA's Am. Cross-Cl. ¶¶ 17-38. Further, dismissal of BDA's federal action does not deprive it of a legal remedy because BDA has filed related claims against Nagin and Nagin Gallop Fegueredo, P.A. in Minnesota state court, and state District Judge Leung denied the Defendants' motion to dismiss. See Boat Dealers' Alliance, Inc. v. Stephen E. Nagin & Nagin, Gallop, Figueredo, P.A., No. CT 03-8329 (Minn. Dist. Ct., Dist. 4, Jan. 15, 2004). Therefore, BDA's Cross-Claim is dismissed with prejudice.

### C. BDA's and Certain '370 Defendants' Motions for Attorneys' Fees Against Manion[8]

BDA and certain '370 Defendants seek attorneys' fees from Manion under the terms of his Management Agreement with BDA. BDA seeks attorneys' fees incurred both before and

---

[8] The '370 Defendants who move for attorneys' fees include: William G. Schaeffer, Boats, Inc., Brian Olson, Donald C. Mackenzie, MarineOne Corp., Tony Lumpkin, Custom Fiberglass Manufacturers, Inc., Frank Franklin, Killinger Marine Center, Inc., Douglass Killinger, Phil Dill Boats, Inc., Phil Dill, Jr., Port Harbor Marine, Inc., Robert Soucy, Russo's Marine Mart, Inc., Lawrence J. Russo, Sr., Summerville Marine, Inc., Cleveland Wilson, Texas Marine & Brokerage, Inc., Texas Marine of Houston, Inc., Texas Marine of Clear Lake, Inc., Michael Hebert, Alex Stirling, Bruce Marine, Inc., Bruce Crowder, Tom Crowder, Cope Auto & Marine, Inc., Kenneth Cope, Counce Marine, Inc., Tandy Counce, "Just Add Water" Boats, Inc., Tim Meyer, Norris Marine Ltd., and Tom Stidham.

after the arbitration proceedings in the '238 litigation, but has not requested fees related to work completed during the arbitration itself. The '370 Defendants request fees generated in defending Manion's suit against them.

Litigants may recover attorneys' fees "if specifically authorized by contract or statute." Van Vickle v. C.W. Scheurer & Sons, Inc., 556 N.W.2d 238, 242 (Minn. Ct. App. 1996); see also Chicago Title Ins. Co. v. F.D.I.C., 172 F.3d 601, 604-05 (8th Cir. 1999); N. Lakeland Pain & Trauma, Inc. v. Benson, 813 So.2d 1075, 1076 (Fla. Dist. Ct. App. 2002) (holding that a prevailing party is not generally entitled to attorneys' fees absent a statutory or contractual basis). Paragraph 9D of the BDA Management Agreement entitles the prevailing party to payment of attorneys' fees and costs in any litigation resulting from the agreement. It states as follows:

> If any dispute arising out of this Agreement results in arbitration, litigation, or appeal, the substantially prevailing party shall be entitled to repayment of reasonable attorneys' fees and costs associated with such legal action.

See Wackman Aff. of 7/3/03 Ex. A. [Docket No. 115].

BDA and the '370 Defendants claim that they are "substantially prevailing parties" as stated in Paragraph 9D. Under Florida law, which controls the interpretation of the Management Agreement, a "prevailing party" for attorneys' fees purposes is the party who wins the significant issues involved in the litigation.[9] See Moritz v. Hoyt Enterprises, Inc., 604 So.2d 807, 810 (Fla. 1992). Only one party prevails in a breach of contract claim absent compelling or unusual circumstances. See Hutchinson v. Hutchinson, 687 So.2d 912, 913 (Fla. Dist. Ct. App. 1997);

[9] Paragraph 9B of the Management Agreement states "This Agreement shall be construed and interpreted in accordance with the laws of the State of Florida." Id. at 8.

Green Cos., Inc. v. Kendall Racquetball Inv., Ltd., 658 So.2d 1119, 1121 (Fla. Dist. Ct. App. 1995). Because the Arbitrator determined that Manion's bad faith and grossly negligent conduct provided BDA with justification to terminate Manion, denied Manion's breach of contract claim, and concluded that BDA was the "substantially prevailing party" in the arbitration, BDA qualifies as a prevailing party. BDA has also successfully defended the Arbitration Award in federal court, strengthening its designation as a prevailing party. Based on these results from the arbitration and litigation, BDA has proven that it is a "substantially prevailing party" under Paragraph 9D.

While BDA is entitled to attorneys' fees, establishing whether BDA may recover both pre- and post-arbitration fees requires additional analysis. BDA moves to recover $46,807.80 in fees that the law firms of Gadsby & Hannah, L.L.P. ("Gadsby") and Cousineau, McGuire & Anderson ("Cousineau") generated for work completed before the arbitration.[10] Assuming that BDA moved for all pre-arbitration fees during arbitration, collateral estoppel precludes BDA from recovery. As discussed above, collateral estoppel prohibits parties from re-litigating issues which have already been adjudicated on the merits in prior proceedings, and an arbitration award constitutes a final adjudication on the merits. Wellons, 869 F.2d at 1168. BDA currently moves for fees unrelated to the arbitration, but appears to have previously sought payment of these same fees during arbitration. In BDA's post-arbitration brief regarding attorneys' fees, BDA asked the Arbitrator to award all attorneys' fees and costs incurred through March 11, 2002. See Mem. in Opp'n to BDA's Mot. for Attys' Fees Ex. 1 (emphasis added). This statement suggests that BDA

[10] BDA requests $13,681 in fees for Gadsby & Hannah, L.L.P. and $33,126.80 in fees for Cousineau, McGuire & Anderson.

requested pre-arbitration fees related to the arbitration and fees generated from non-arbitration work. Because the Arbitrator declined to award any fees attributable to Gadsby or Cousineau in the Final Award, BDA may not now seek recovery of these same fees.

Even if collateral estoppel does not bar BDA's current motion, 9D limits recovery to reasonable attorneys' fees. The value of fees generated from work completed two to four years ago by Gadsby and Cousineau, firms no longer participating in this litigation, is "highly speculative and conjectural" for the reasons cited in the Final Award. Wackman Aff. Ex. 9. Therefore, BDA's Motion for an Award of Attorneys' Fees is denied to the extent it seeks pre-arbitration fees.

BDA may however, recover post-arbitration fees related to this litigation. BDA has incurred legal fees in defending Manion's two motions to vacate the arbitration award and in moving to confirm the award. Because this work directly relates to the dispute with Manion over the Management Agreement and the arbitration award has been confirmed, BDA is the "substantially prevailing party" and Paragraph 9D applies. See Order of June 20, 2003. BDA has not yet recovered these fees, and could not have moved for payment before issuance of the Final Award since the fees had not yet been generated. Thus collateral estoppel does not bar recovery of the post-arbitration attorneys' fees. Finally, the amount of BDA's request is reasonable and fair given the legal work provided by the Rider Bennett law firm, BDA's current counsel. Therefore, BDA's request for post-arbitration attorneys' fees totaling $45,041.50 is

granted.[11]

Whether the '370 Defendants are entitled to attorneys' fees as a prevailing party under 9D presents a closer question. The '370 Defendants are not signatories of the Management Agreement, but argue that they are third party beneficiaries and that 9D consequently applies to them. The '370 Defendants state further that they are a prevailing party because the'370 lawsuit, which arose from the parties' dispute about the Management Agreement, was dismissed on their motion. Manion counters that the '370 Defendants have not shown that they are third-party beneficiaries of the Management Agreement and therefore cannot recover attorneys' fees.

Traditional principles of contract interpretation and construction determine one's status as a third-party beneficiary. See United Steel Workers of Am., AFL-CIO-CLC v. Rawson, 495 U.S. 362, 375 (1990); Pure Country, Inc. v. Sigma Chi Fraternity, 312 F.3d 952, 958 (8th Cir. 2002). Whether the parties intend the contract to benefit a third party is a question of fact. Gold'n Plump Poultry, Inc. v. Simmons Eng'g Co., 805 F.2d 1312, 1318 (8th Cir. 1986); Decarlo v. Griffin, 827 So.2d 348, 352 (Fla. Dist. Ct. App. 2002). Under Florida law, one is a third-party beneficiary only if the parties to the contract "clearly express, or the contract itself expresses, an intent to primarily and directly benefit the third party or a class of persons to which that party claims to belong." Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd., 647 So.2d 1028, 1031 (Fla. Dist. Ct. App. 1994). It must be shown that both contracting parties intended to benefit the third party in order to prove the requisite intent. Id.

[11] BDA's request for fees incurred from June 30, 2003 through this Motion's hearing date of December 11, 2003 is not addressed because BDA did not submit affidavits itemizing fees for this period.

The '370 Defendants cannot benefit from the attorneys' fees provision in Paragraph 9D because they have not proven that they are third-party beneficiaries of the Management Agreement. The record lacks any evidence suggesting that BDA, let alone Manion, intended that BDA members would benefit from the Management Agreement's terms. The Management Agreement lists BDA and Manion as the contracting parties and details Manion's duties as BDA's executive director, but does not name a third-party beneficiary. See Wackman Aff. of 7/3/03 Ex. A. Further, the '370 Defendants do not cite other evidence beyond the Management Agreement to support their claim. Consequently, the '370 Defendants Motion for Attorneys' Fees is denied.

### D. BDA's and Certain '370 Defendants' Motions for Sanctions[12]

Finally, BDA and certain '370 Defendants move for sanctions against Manion and his counsel, alleging Manion acted in bad faith during this litigation. BDA and the '370 Defendants request Rule 11 sanctions against either Manion or his attorney William J. French ("French") and the law firm of Conant, French & Chaney ("Conant"), and seek additional sanctions under 28 U.S.C. § 1927 against French and Conant for their "unreasonable and vexatious multiplication of the proceedings in this case." See BDA's Mem. in Support at 1.

Both Rule 11 and § 1927 allow courts to sanction attorneys for improper conduct. Rule

---

[12] The '370 Defendants who move for sanctions include: William G. Schaeffer, Boats, Inc., Brian Olson, Donald C. Mackenzie, MarineOne Corp., Tony Lumpkin, Custom Fiberglass Manufacturers, Inc., Frank Franklin, Killinger Marine Center, Inc., Douglass Killinger, Phil Dill Boats, Inc., Phil Dill, Jr., Port Harbor Marine, Inc., Robert Soucy, Russo's Marine Mart, Inc., Lawrence J. Russo, Sr., Summerville Marine, Inc., Cleveland Wilson, Texas Marine & Brokerage, Inc., Texas Marine of Houston, Inc., Texas Marine of Clear Lake, Inc., Michael Hebert, Crocker's Marine Inc., Crocker & Co. L.L.C., Morehead Marine Inc., Newland Kay Crocker, and Terry G. Wilder.

11 authorizes sanctions against attorneys who file pleadings and motions that have no legal or factual basis, or who take actions intended to harass, delay, or unnecessarily add cost to the litigation. Fed. R. Civ. P. 11. Section 1927 provides that an attorney who "multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees . . . ." 28 U.S.C. § 1927. However, because our adversarial legal system is premised on zealous advocacy, sanctions are appropriate only when an attorney intentionally and recklessly disregards his duties to the court, as viewed from an objective standard. See Lee v. First Lenders Ins. Servs., Inc., 236 F.3d 443, 445 (8th Cir. 2001); Ringsred v. City of Duluth, 187 F. Supp. 2d 1141, 1166 (D. Minn. 2001). The imposition of sanctions "is a serious matter and should be approached with circumspection." O'Connell v. Champion Int'l Corp., 812 F.2d 393, 395 (8th Cir. 1987).

The line between being a zealous advocate and a vexatious lawyer has been stepped on in this case, but has not been stepped over. BDA and the '370 Defendants provide numerous examples of what they claim is improper behavior on attorney William French's part, including his motion for a preliminary injunction requiring BDA to pay Manion's salary, his initial motion to vacate the Arbitration Award, and his filing of the Amended Complaint in the '370 case. However, the Court is not in a position to determine whether the flames of this long-lived litigation were fanned by Manion or his counsel French. While some attorneys might question the efficacy of French's legal strategy, his actions do not reveal an intentional and reckless disregard of his duties to the court. Therefore, BDA's and the '370 Defendants' Motions for Sanctions are denied.

**E. Miscellaneous Pending Motions**

Two additional motions remain: (1) BDA's Motion for Entry of Default Judgment ['238 Docket No. 133]; and (2) the '238 Defendants' Motion to Stay Discovery ['238 Docket No. 128]. In light of the above analysis, the issue of whether BDA is entitled to default judgment is not reached. Additionally, the '238 Defendants' Motion to Stay Discovery is denied as moot.

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The '238 Defendants' Renewed Motion to Dismiss [No. 00-238 Docket No. 148] is **GRANTED**,

2. The '238 Defendants' Motion to Dismiss Boat Dealers' Alliance, Inc.'s Cross-Claim [No. 00-238 Docket No. 139] is **GRANTED**,

3. Plaintiff's Complaint [No. 00-238 Docket No. 1] is **DISMISSED WITH PREJUDICE**,

4. Boat Dealers' Alliance, Inc.'s Cross-Claim [No. 00-238 Docket Nos. 88, 111] is **DISMISSED WITH PREJUDICE**,

5. Boat Dealers' Alliance, Inc.'s Motion for Attorneys' Fees [No. 00-238 Docket No. 113] is **GRANTED IN PART**, and **DENIED IN PART**,

6. The '370 Defendants' Motion for Attorneys' Fees [No. 02-370 Docket Nos. 110, 113] is **DENIED**,

7. Boat Dealers' Alliance, Inc.'s Motion for Sanctions [No. 00-238 Docket No. 116] is **DENIED**,

8. The '370 Defendants' Motion for Sanctions [No. 02-370 Docket Nos. 104, 108] is **DENIED**,

9. BDA's Motion for Entry of Default Judgment [No. 00-238 Docket No. 133] is

**DENIED**,

10. The '238 Defendants' Motion to Stay Discovery in Federal Court [No. 00-238 Docket No. 128] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Date: February 5, 2004