# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

---

No. 04-1579

---

Patrick T. Manion, Jr., *
*
Appellant, *
*
v. *
*
Stephen E. Nagin; Herzfeld & Rubin; *
Herzfeld & Rubin, P.C.; *
Nagin Gallop Figueredo, P.A., *
*
Appellees, *
*
Boat Dealers' Alliance, Inc., *
*
Defendant. *

Appeals from the United States
District Court for the
District of Minnesota.

---

No. 04-1705

---

Patrick T. Manion, Jr., *
*
Plaintiff, *
- - - - - - - - - - - - - - - - - - - - - - - - - - - *
*

SCANNED
FEB 10 2005
U.S. DISTRICT COURT MPLS

Stephen E. Nagin; Herzfeld & Rubin; *
Herzfeld & Rubin, P.C.; *
Nagin Gallop Figueredo, P.A., *
*
Defendants - Appellees, *
*
v. *
*
Boat Dealers' Alliance, Inc., *
*
Defendant - Appellant. *

---

Submitted: October 18, 2004
Filed: January 13, 2005

---

Before MURPHY, HEANEY, and BEAM, Circuit Judges.

---

HEANEY, Circuit Judge.

Patrick T. Manion, Jr., sued attorney Stephen E. Nagin, and the law firms of Herzfeld & Rubin, Herzfeld & Rubin, P.C., and Nagin Gallop Figueredo, P.A., for breach of fiduciary duty, negligence, and tortious interference with contract stemming from Nagin's conduct in the creation and representation of the Boat Dealers' Alliance, Inc. (BDA).[1] The district court[2] dismissed Manion's suit, and we affirm.

---

[1]Manion's companion suit against BDA and its members is also the subject of an appeal. We have issued a separate decision in that case. See Manion v. Nagin, Nos. 03-2869 & 03-2870 (8th Cir. Dec. 16, 2004).

[2]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

## BACKGROUND

Because this matter reaches us following a motion to dismiss the complaint, we construe the pleadings liberally in favor of Manion and accept the allegations in his complaint as true. Wisdom v. First Midwest Bank, 167 F.3d 402, 406 (8th Cir. 1999).[3] Patrick Manion worked for many years in the pleasure boat industry. In 1995, he came up with a plan to organize, own, and operate an entity made up of retail boat dealers, who would use their buying power to purchase marine equipment at significant discounts.

Stephen Nagin held himself out as an attorney who was experienced in representing buying groups. When Manion contacted Nagin about Manion's idea to create his marine buying group, Nagin boasted that he was a "world class lawyer" working at a "world class law firm." (Appellant's App. at 32.) He claimed to be one of the few lawyers in the country who had expertise in organizing buying groups. In the spring of 1995, Nagin agreed to represent Manion in creating and running BDA. Nagin told Manion that he would charge $300 per hour for his work on BDA, but eventually the two agreed that Nagin would charge $150 an hour but also receive ten percent of BDA's preferred stock. Owners of the preferred stock received ten percent of BDA's annual distributable income. Until Nagin suggested he take an ownership interest in BDA's preferred stock, Manion intended to be the sole owner of it.

Nagin incorporated BDA in Florida. Manion questioned whether it was wise to incorporate in this venue, but Nagin shrugged off Manion's concern, stating "I am the attorney. I am the one who is well versed in this. Let me do my job and you do

---

[3]The district court properly considered the motion as one to dismiss rather than one for summary judgment because the only matters beyond the pleadings relied upon by the district court were matters of public record. Accord Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (noting that district court may consider public records from other proceedings in ruling on a motion to dismiss).

yours." (Appellant's App. at 34.) When Nagin prepared BDA's By-Laws, Manion noticed that preferred stock shareholders could only vote for certain changes in the By-Laws, while common stock shareholders had unrestricted voting rights. He questioned Nagin about how he, owning only preferred stock, could control BDA if he could not vote on general matters. Nagin advised Manion that he maintained control over BDA because the value of his preferred stock was so much greater than the value of common stock, and because of a Management Agreement that Nagin had drafted to serve as Manion's employment contract with BDA. Nagin assured Manion that the Management Agreement precluded BDA from removing Manion from his position as executive director for any reason for twenty years.

By 1996, Nagin had become unhappy with his fee structure. He wrote to Manion, asserting that he was not receiving the amount of compensation they had anticipated in crafting the fee agreement. The two agreed on a new fee structure, whereby Nagin received a greater percentage of the preferred stock dividends. Manion was the only other shareholder of the preferred stock, meaning that the increased legal fees would be paid from monies originally due to Manion.

On February 13, 1999, BDA held a special meeting at which BDA terminated Manion. In arbitration proceedings related to Manion's claims of wrongful termination, BDA successfully argued that its termination of Manion was proper because he acted in bad faith against the interests of BDA. The district court confirmed the arbitration award, and this court affirmed. See Manion v. Nagin, Nos. 03-2869 & 03-2870 (8th Cir. Dec. 16, 2004). Manion, still a majority shareholder of the preferred stock, decided to attend BDA's April 10, 1999 meeting. At the meeting, Manion learned that Nagin had asked BDA's Finance Committee to search for additional grounds to justify BDA's termination of Manion. When Manion learned about this, he asked Nagin who he was representing. Nagin responded that he represented BDA. Up until this point, Nagin had not told Manion that he did not represent Manion, and Manion considered Nagin to be his lawyer.

Manion filed suit against BDA, its individual members, Nagin, and his law firms. The district court directed arbitration with regard to Manion's complaint against BDA and its members pursuant to the terms of his contract, and stayed his claims against Nagin and the law firms pending the outcome of the arbitration. This court affirmed. Manion v. Nagin, 255 F.3d 535 (8th Cir. 2001). Following the arbitrator's decision, Nagin and the law firms moved to dismiss Manion's complaint, contending that the claims were either legally deficient, collaterally estopped, or barred for failure to comply with a Minnesota statute concerning legal malpractice claims. The district court dismissed Manion's complaint, and this appeal followed.

## ANALYSIS

The district court found that Manion's tortious interference with contract claim and some of his negligence claims were barred by the doctrine of collateral estoppel, also known as issue preclusion. "We look to state law in determining whether to apply issue preclusion," Liberty Mut. Ins. Co. v. FAG Bearings Co., 335 F.3d 752, 758 (8th Cir. 2003), and review the district court's ruling on the matter de novo, Nat'l Union Fire Ins. Co. v. Terra Indus., Inc., 346 F.3d 1160, 1164 (8th Cir. 2003). A party is precluded from litigating an issue if the following conditions are met: 1) the issue to be litigated is identical to one already decided in a prior adjudication; 2) the earlier case resulted in a final judgment on the merits; 3) the party raising the issue was a party to or in privity with a party to the prior case; and 4) the party was given a full and fair opportunity to be heard on the issue. Crumley v. City of St. Paul, 324 F.3d 1003, 1006 (8th Cir. 2003) (stating Minnesota legal standard for the doctrine of collateral estoppel); Cmty. Bank of Homestead v. Torcise, 162 F.3d 1084, 1086-87 & n.7 (11th Cir. 1998) (recognizing similar elements under Florida substantive law).[4]

[4]There is a question as to whether Minnesota or Florida law governs Manion's claims. We have included citations to both, as the result is the same under either state's law.

Manion first argues that the district court erred by relying on findings in his related arbitration proceeding against BDA and its members when deciding if any of his claims were collaterally estopped against Nagin and the law firms. We disagree. An arbitration award counts as a final judgment for collateral estoppel purposes. Wellons, Inc. v. T.E. Ibberson Co., 869 F.2d 1166, 1168-69 (8th Cir. 1989). While Manion complains that he did not get a full and fair hearing in the arbitration, we have considered this argument at length in the related appeal of Manion v. Nagin, Nos. 03-2869 & 03-2870 (8th Cir. Dec. 16, 2004), and rejected Manion's position.

Manion's tortious interference with contract claim stems from his allegation that Nagin interfered with his employment rights under his Management Agreement. In order to prove tortious interference, Manion is required to show that he had valid contract rights which Nagin knew about and procured another party to breach without justification, and that he was damaged by the breach. Guercio v. Prod. Automation Corp., 664 N.W.2d 379, 389 (Minn. Ct. App. 2003); accord Salit v. Rudin, McClosky, Smith, Schuster, & Russell, P.A., 742 So. 2d 381, 385-86 (Fla. Dist. Ct. App. 1999) (stating that under Florida law, a plaintiff alleging tortious interference must prove the existence of a business relationship accompanied by legally enforceable rights, the intentional and unjustified interference with that relationship, and damages). Manion arbitrated the issue of whether BDA breached his Management Agreement without justification. The arbitrator interpreted the contract to permit BDA to terminate Manion if he was grossly negligent or acted in bad faith. Finding that Manion demonstrated bad faith in three instances where he failed to act in BDA's financial interest, the arbitrator held that BDA was justified in terminating Manion's employment contract.

The arbitration decision precludes Manion's tortious interference with contract claim against Nagin and his firms. Manion alleged that Nagin assisted BDA in breaching Manion's contract. But, as the arbitrator found, BDA was justified in terminating Manion's contract because of his bad faith conduct. To sustain his claim,

Manion must prove that Nagin assisted BDA in terminating him without justification, Guercio, 664 N.W.2d at 389; Salit, 742 So. 2d at 385-86, and he cannot do so here on account of the arbitrator's contrary ruling.

The same analysis applies to the negligence claims dismissed by the district court on collateral estoppel grounds. Manion alleged that Nagin was negligent in not protecting Manion's ownership rights to his preferred stock, and that he was damaged by the loss of the stock. The arbitrator, however, found that Manion was still the rightful owner of the preferred stock and entitled to all benefits attendant to ownership. Since Manion's claimed damages flowed from his alleged loss of the stock, and the arbitrator found that Manion never in fact lost his stock, he has suffered no injury. Proof of damages or a cognizable injury is essential to a negligence claim. Lubbers v. Anderson, 539 N.W.2d 398, 401 (Minn. 1995); Fla. Power & Light Co. v. Lively, 465 So. 2d 1270, 1273 (Fla. Dist. Ct. App. 1985). Manion cannot establish the essential elements of negligence for his action concerning his preferred stock.

The district court dismissed the remainder of Manion's suit, which alleged negligence and the breach of fiduciary duty related to Nagin's legal work, because it found he failed to state a claim. The lynchpin of this holding was the district court's determination that Nagin was never working as Manion's personal lawyer, and thus owed Manion no duty whatsoever.

To maintain a claim for negligence deriving from legal malpractice, the plaintiff must demonstrate the existence of an attorney-client relationship. Wartnick v. Moss & Barnett, 490 N.W.2d 108, 112 (Minn. 1992); Horowitz v. Laske, 855 So. 2d 169, 173 (Fla. Dist. Ct. App. 2003). Similarly, an attorney undertaking an attorney-client relationship assumes fiduciary duties, the breach of which may be actionable. STAR Ctrs., Inc. v. Faegre & Benson, L.L.P., 644 N.W.2d 72, 77 (Minn. 2002); Behr v. Foreman, 824 So. 2d 222, 223-24 (Fla. Dist. Ct. App. 2002).

In Minnesota, an attorney-client relationship can be created through contract or tort theory. Gramling v. Mem'l Blood Ctrs., 601 N.W.2d 457, 459 (Minn. Ct. App. 1999). Under the former, the plaintiff must show the creation of the relationship through either express or implied contract. Id. The tort theory of representation recognizes the existence of an attorney-client relationship "whenever an individual seeks and receives legal advice from an attorney in circumstances in which a reasonable person would rely on such advice." Id. at 460. Likewise, in Florida the test for determining if an attorney-client relationship exists depends on the client's belief that he is consulting with an attorney for the manifest purpose of obtaining legal advice. Fla. Bar v. Beach, 675 So. 2d 106, 109 (Fla. 1996). In both states, though, an individual's subjective expectation that a lawyer will represent the person is insufficient as a matter of law to create the relationship. Id.; Gramling, 601 N.W.2d at 460.

The district court held that the complaint did not sufficiently show that Nagin and Manion had established an attorney-client relationship. The court noted that Nagin's work was solely related to the creation and operation of BDA, and that Nagin never worked on anything for Manion individually. Invoking the well-established rule that a corporate employee does not generally enjoy an attorney-client relationship with corporate counsel, the court dismissed the claims which required proof of that relationship as an element.

Florida and Minnesota have both adopted rules of professional conduct which govern the actions of their states' lawyers. Both states have nearly identical rules about the representation of corporations and similar entities, making clear that the attorney's duty attaches to the entity, not its constituents. Minn. R. Prof. Conduct 1.13(a); R. Regulating Fla. Bar 4-1.13. Cases interpreting these rules have adhered to this proposition. See Humphrey v. McLaren, 402 N.W.2d 535, 540 (Minn. 1987) (noting that in representing a corporation against one of its officers or employees, corporate counsel's "allegiance is to the organization"); Brennan v. Ruffner, 640 So.

2d 143, 145-46 (Fla. Dist. Ct. App. 1994) (holding that generally an attorney representing a closely held corporation "owes no separate duty of diligence and care to an individual shareholder absent special circumstances or an agreement to also represent the shareholder individually"). The district court also turned for guidance to a Wisconsin Supreme Court case, Jesse v. Danforth, 485 N.W.2d 63 (Wisc. 1992). Jesse involved a medical malpractice suit against a few named health care professionals. Two of the doctors moved to disqualify the plaintiffs' law firm because the firm had helped those doctors to create a corporation for the purpose of purchasing and operating MRI equipment. The corporation was not a party to the Jesse suit. The question presented to the Wisconsin Supreme Court was whether the plaintiffs' law firm must be disqualified where one of its members represented the defendant doctors in their formation of the MRI-related corporation. The court noted that at the initial stages of the firm's relationship with the doctors, it was representing them personally because no corporation had yet been formed. Still, since the representation was limited solely to the creation of the MRI corporation, the court retroactively applied the entity rule to hold that the firm never actually represented the doctors individually:

> [W]here (1) a person retains a lawyer for the purpose of organizing an entity and (2) the lawyer's involvement with that person is directly related to that incorporation and (3) such entity is eventually incorporated, the entity rule applies retroactively such that the lawyer's pre-incorporation involvement with the person is deemed to be representation of the entity, not the person.

Id. at 67.

Relying on Jesse, the district court invoked the entity rule to find that Nagin exclusively represented BDA. We agree that if Nagin's only interaction with Manion was to create BDA, Nagin could not be considered Manion's lawyer. Liberally construing the complaint in Manion's favor, though, we cannot agree that Nagin only

operated as BDA's attorney. While Nagin may well have represented BDA as its corporate counsel, this does not preclude a finding that Nagin also provided Manion with legal advice and thus established an attorney-client relationship.[5] Manion alleged that he sought and received guidance about how he could maintain control of the corporation. Nagin's advice here was not to BDA, but to Manion personally. Similarly, Manion used Nagin to draft an employment agreement between himself and BDA. Manion expressed his concern that the agreement sufficiently protect his interests, and Nagin accordingly drafted the agreement in a manner that he told Manion woud ensure a twenty-year term of employment. When Nagin renegotiated his payment agreement, he and Manion agreed that Nagin would receive a portion of Manion's preferred share dividends. In other words, Nagin was paid for his services, at least in part, out of Manion's pocket.

When Manion asked questions about the incorporation documents and his employment agreement, he was seeking an opinion about the legal interpretation of the documents and whether they benefitted him as contemplated. These matters were not directly related to the formation of BDA–they concerned Manion's personal concerns of how he would be employed, and whether he would have control of the corporation. Cf. Jesse, 485 N.W.2d at 67 ("[W]here the person who retained the lawyer provides information to the lawyer not directly related to the purpose of organizing an entity, then it is the person, not the corporation, which holds the privilege for that communication."). Providing Manion with advice about his personal interest in BDA and the Management Agreement was obviously beyond the scope of Nagin's job as BDA's attorney, and perhaps contrary to it. If Nagin was truly working exclusively as BDA's lawyer, he should have responded to Manion's questions by clarifying that he worked only for BDA and suggested Manion seek

[5]The rules professional conduct of both Minnesota and Florida in fact contemplate that corporate counsel may also act as the attorney for an officer or employee of the corporation and generally permit such conduct. Minn. R. Prof. Conduct 1.13(e); R. Regulating Fla. Bar 4-1.13(e).

outside counsel. See Minn. R. Prof. Conduct 1.13(d) (requiring corporate counsel who is dealing with a shareholder or employee to "explain the identity of the client when it appears that the organization's interests are adverse to those of the constituents with whom the lawyer is dealing"); R. Regulating Fla. Bar 4-1.13(d) (same). Instead, Nagin advised Manion that he maintained control over BDA by having a strong financial interest in the preferred stock shares and by holding a twenty-year employment contract. Manion sought and received legal advice on these matters from Nagin, and that is sufficient to establish that an attorney-client relationship existed between the two of them. Gramling, 601 N.W.2d at 460; Beach, 675 So. 2d at 109.

Nonetheless, Manion has not stated a cognizable claim related to his attorney-client relationship with Nagin. Manion has sufficiently alleged that he established an attorney-client relationship with Nagin relating to Manion's employment contract and control of the corporation. But the arbitrator in Manion's related action against BDA found that Manion operated in bad faith against the corporation's interests by overpaying himself and other BDA shareholders and by failing to disclose financial data which would have revealed his bad faith. Bound by that finding, the defect in Manion's claims becomes obvious: he asks us to hold that Nagin committed legal malpractice by not warning him that he may lose control of BDA for committing malfeasance toward it, or protecting Manion from termination once Manion operated in that manner. Such a claim is not viable under either Minnesota or Florida law. Accord Minn. R. Prof. Conduct 1.2(c) (forbidding an attorney from assisting a client in fraudulent or deceitful conduct); R. Regulating Fla. Bar 4-1.2(d) (same). Accordingly, we affirm the district court's dismissal of Manion's breach of fiduciary duty and negligence claims as they related to Nagin's legal work. See Tademe v. Saint Cloud State Univ., 328 F.3d 982, 990 (8th Cir. 2003) (noting that this court may affirm the district court's grant of summary judgment on any basis supported by the record).

## CONCLUSION

We affirm the district court, and deny the appellees' motion to supplement the record.

---

A TRUE COPY OF THE ORIGINAL
MICHAEL E. GANS, CLERK
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
BY: Michael E. Gans