# CONFIDENTIAL LONG-TERM MANAGEMENT AGREEMENT

* * *

BETWEEN:

PATRICK T. MANION, JR., who resides at 3983 Pine Point Road, St. Cloud, Minnesota 56303 (referred-to in this Agreement as "MANION"),

AND:

BOAT DEALERS' ALLIANCE, a buying/merchandising cooperative to be formed as a Florida corporation, having its place of business at 3983 Pine Point Road, St. Cloud, Minnesota 56303 (referred to in this Agreement as "BDA").

WHEREAS, BDA was created and organized by MANION for the purpose of forming and operating a buying/merchandising cooperative to be composed of individual, independent retail marine dealers with common interests and desires to achieve efficiencies in promotions and purchases of marine equipment and non-disposable marine supplies, as well as to receive the benefit of joint promotions and more favorable purchasing arrangements than the individual dealers generally receive from manufacturers of ; and

WHEREAS, MANION has over twenty years experience working for boat manufacturers and desires to create and organize BDA for the purpose set forth above; and

WHEREAS, it is the desire and intent of BDA to hire and employ MANION to provide the specified services attendant to and necessary in the formation, planning, operation and conduct of the day-to-day business of BDA, which is set forth in this Management Agreement; and

WHEREAS, it is MANION's desire to be hired and employed by BDA to provide the specified services attendant to and necessary in the planning, operation and conduct of the day-to-day business of BDA as set forth in this Management Agreement; and

WHEREAS, MANION voluntarily decided to form BDA as a cooperative that shares ownership between Preferred shareholders and Members (which shall comprise its Common Shareholders), rather than as a corporation which he owns outright, so that the cooperative becomes Member-driven in its outlook and operations;



Exhibit "A"

EXHIBIT
A

WHEREAS, the BDA Board of Directors, as well as all Charter Members in attendance at its meeting on March 3, 1996, have fully reviewed, approved, and authorized the execution of this contract

NOW THEREFORE, in consideration of the promises and mutual covenants set forth in this Management Agreement' and other good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the parties to this contract hereby covenant and agree as follows:

1. **SUPERSEDING EFFECT:**

This Management Agreement shall supersede all prior oral or written agreements, if any, between the parties and constitutes the entire agreement between MANION and BDA concerning the subject matter set forth in this contract.

2. **DEFINITIONS:**

As used in this contract, the following terms and conditions shall be defined as follows:

A. By-Laws: The BDA By-Laws

B. Member(s): The affiliated dealers in BDA.

C. Management Agreement: This contract and any and all amendments and modifications executed and delivered to the parties to this Management Agreement in the manner specified, below.

D. Marine Equipment: Those items of Marine Equipment commonly as understood and used in the retail marine industry, including but not limited to boats, trailers and parts, outboard motors and stern drives, jet skis and personal watercraft, and the like.

E. Non-Disposable Marine Supplies: Those items of Non-Disposable Marine Supplies as commonly understood and used in the retail marine industry, including but not limited to boat accessories (including but not limited to charts, compasses, coverings [boat tops, cushions, carpets, enclosures, and sun shades], diving equipment, fishing tackle, life-preservers, lines and rope, marine electronics, marine hardware and paint, water skis, wind surfers, etc.) and similar items.

F. Confidential Information: Information relating to the membership merchandising programs, purchasing programs, discount percentages, advance flyers, operational procedures and controls, computer database(s), correspondence, electronic mail, reports, internal documents, price lists, non-public information about vendors, non-public contracts, this Management Agreement, and other secret information relating to BDA, including the By-Laws.

G. Earned Incentives: All gross discounts in excess of benchmarked "best published vendor program" less "Operating Expenses" before distributions and before income taxes, if any (regardless of form or method of payment). Such gross discounts shall include but not are limited to volume incentives, promotional allowances, rebates and other benefits of every kind ~~or type~~ paid or credited by manufacturers or any other source(s) to or through BDA as calculated in accordance with contracts between BDA and its affiliated Vendors.

H. Best Published Vendor Program: A benchmarked percent, determined for each Vendor by the Executive Director and the Executive Committee, based on each Vendor's model year published prices (including standard advertising or co-op advertising allowances) that legally are available to any individual boat dealer that purchased and paid for the volume of that Vendor's products required to obtain such published prices, as of the Vendor's preceding model year.

I. Operating Expenses: All approved costs of operations, including depreciation of capitalized items but not including extraordinary or capitalized expenditures, taxes, or merchandising expenses.

J. Applicable Percentage: The percentage of Earned Incentives which shall be used to compute the dividends to be paid to BDA Preferred shareholders.

3. **EMPLOYMENT OF MANION:**

BDA agrees to employ MANION pursuant to this Management Agreement to perform the services specified below, and MANION accepts such employment in accordance with stated terms and conditions and for the duration of this Management Agreement, unless previously terminated by MANION's death, resignation, ~~or a~~ disability of sufficient magnitude to preclude him from substantially fulfilling his responsibilities under this Management Agreement, termination for proven felonious conduct, bad faith conduct which is against the interests of the corporation (malfeasance), or grossly negligent conduct that substantially impairs the continued viability of the corporation.

4. **MANION'S DUTIES AND RESPONSIBILITIES:**

A. MANION shall, during the term of this Management Agreement, provide the services specified below in connection with the day-to-day affairs of BDA, subject, however, to the authority of the BDA Board of Directors or, where applicable, the Executive Committee of the Board of Directors, as set forth in the BDA By-Laws. MANION's duties shall consist of the following:

1. Complete charge of the conduct and operation of the corporation's day-to-day affairs, including but not limited to carrying out the policies of the Board of Directors or the shareholders; providing day-to-day management; representing BDA at industry functions; hiring appropriate and necessary staff and outfitting the corporation's offices with appropriate equipment and supplies; preparing billings, maintaining records of payments to the organization, and overseeing deposits of funds paid to the organization into accounts maintained by BDA; overseeing preparation of checks and handling necessary disbursements; implementing procedures for ordering and for verifying orders for marine equipment and non-disposable marine supplies; providing the corporation's General Counsel with such information necessary to render legal opinions, assure the corporation is duly authorized to transact business; and to provide such legal services as may be required; preparing annual budgets and providing the corporation's Certified Public Accountants with such reports and information as may be necessary to facilitate preparation of audited financial statements and tax returns;

2. Overall responsibility for creation and maintenance of the premier buying group in the retail marine industry, including but not limited to identifying potential opportunities that would enable Members to purchase more efficiently, using his best efforts to procure Vendors and negotiate purchasing contracts, spot-buys, or most favored dealer incentives with those Vendors; and assuring that appropriate measures are taken to ensure that Confidential Information is strictly maintained at all times and is not divulged to third parties.

3. Overall responsibility for selecting meeting sites and negotiating with hotels in connection with BDA meetings, and coordinating the meetings, shows, conventions, or other joint activities of the organization;

4. Overall responsibility for membership matters including but not limited to implementing and administering any assessments authorized by the Board of Directors or the Executive Committee; collecting dues and assessments; encouraging maximization of purchasing programs; and handling applications for BDA membership;

5. Overall responsibility for maximizing opportunities for joint merchandising programs, including but not limited to overseeing creation and printing of sales flyers, point-of-purchase materials and the like;

6. Overall responsibility for providing billing and general administrative services for the organization including but not limited to making such periodic or special reports to the Board of Directors relating to matters of concern or general interest with respect to BDA, as requested by the Board of Directors or the Executive Committee; and

7. Overall responsibility for utilizing corporate resources in an effective and efficient manner taking into account the character and functions of the organization and considering the best interests of the Members.

B. Manion undertakes to perform only those duties that specifically as set forth in this Management Agreement as well as such activities naturally arising from the duties specifically set forth in this Management Agreement. Without limiting the generality of the foregoing, it specifically is agreed that MANION shall not be expected to perform for BDA any of the following duties:

1. Any duties that require the services of a licensed attorney-at-law;

2. Any duties that are the responsibility of the corporation's Certified Public Accountants;

3. Any duties for which third parties will be contracted to perform, such as printing, arranging travel, etc.;

4. Any duties relative to exercising ultimate responsibility which rests with the Board of Directors, the Executive Committee, or the shareholders, pursuant to the BDA By-Laws; and

5. Except to the extent required by law or expressly required by this Management Agreement, any duties whatsoever in respect to his Executive Director functions at any time following the expiration or termination of this Management Agreement.

C. Except as otherwise provided in this Management Agreement, MANION shall be entitled to use and rely on his best judgment in dealing with the foregoing matters, subject, however, to any specific advice or direction received from the Board of Directors in particular instances, pursuant to its prerogatives as set forth in the BDA By-Laws.

5. **APPOINTMENT OF PROFESSIONALS:**

MANION promptly shall appoint from time to time as may be necessary:

1. An independent Certified Public Accountant or accounting firm to provide accounting and auditing services to BDA; and

2. An attorney or firm of attorneys to serve as General Counsel, to represent BDA in respect to corporate matters, claims, suits, and all manner of legal services. General Counsel shall attend all Board of Directors meetings and shareholders meetings, and shall prepare minutes for review by the Executive Director and the Secretary of the corporation.

MANION retains the right to discharge any professionals so appointed upon employing substitute professionals to provide services to BDA. MANION promptly shall notify the BDA Board of Directors of all professionals so appointed or discharged.

6. **COMPENSATION; EXPENSE REIMBURSEMENT:**

A. BDA agrees to pay MANION, throughout the term of this Management Agreement, an *annual salary* of the greater of $110,000 per year or fifteen percent (15%) of the first $5,000,000, twelve and a half percent (12½%) of the next $10,000,000, ten percent of the next $15,000,000, eight percent (8%) of the next $20,000,000, and five percent (5%) thereafter, of all Earned Incentives in excess of the sum of all Best Published Vendor Programs as calculated for each Member, less Operating Expenses. Such Earned Incentives shall be paid in equal monthly installments. In the event that fifteen percent of all Earned Incentives is greater than the base rate of $110,000, any remainder due to MANION shall be paid at the same time and in the same manner as patronage dividends are paid to Members, or within eight and a half (8½) months of any year, whichever is sooner. During the first two years of this long-term Management Agreement, in the event there is insufficient revenue to pay MANION's annual salary, whatever portion or percentage that is unpaid shall be accrued and paid during the third (and, only if necessary fourth) year(s) of this Management Agreement.

B. In addition, contemporaneous with the provisions set forth in the immediately preceding paragraph, BDA shall set aside a fund, annually, and pay from that fund to the BDA Preferred shareholders, ten percent (10%) of all Earned Incentives in excess of the sum of all Best Published Vendor Programs as calculated for each Member, less Operating Expenses, but including earned interest (if any) on funds set aside pursuant to this paragraph, or in lieu of such *annual dividend*, may substitute and pay as a *bonus* in lieu of said annual dividend, at the election of all Preferred Shareholders who

serve in a managerial or professional capacity, the Applicable Percentage in accord with each Preferred shareholder's respective number of shares.

C. MANION shall receive the right to participate in all benefits generally provided from time-to-time to BDA employees, such as group life, health, and disability insurance.

D. MANION shall be entitled to take up to three weeks paid vacation each year for the first five years, and four weeks per year thereafter. Unused vacation time neither shall be carried over in any other year nor shall any salary or other payment be taken in lieu of vacation(s).

E. BDA agrees to reimburse MANION for all *reasonable and necessary expenses* incurred on behalf of BDA in his capacity as Executive Director, including but not limited to airfare (at the unrestricted coach class rate), and membership in not more than two airline clubs; automobile rental, insurance, and fuel (or prevailing mileage established by the American Automobile Association or its equivalent, if a personal vehicle is used) when associated with travel for BDA; reasonable lodging and food expenses associated with BDA travel; telephone or comparable communications expenses incurred through or on behalf of BDA; subscriptions to industry publications, and access to other publications or research through the Internet; a portable computer and printer equipped for communications, along with appropriate software; a portable telephone or other communications device; and an expense account to be approved by the Board of Directors.

7. **DURATION OF THIS AGREEMENT; PROCEDURE FOR TERMINATION; NON-COMPETITION AFTER TERM:**

A. This Agreement shall be in full force and effect for an initial period of not less than twenty (20) years from the "anniversary date" of:

July 1, 1995

B. After the initial twenty year period, this Agreement shall be extended and continue in effect from year-to year, unless either BDA or MANION, without cause, elects to terminate upon the anniversary date in any subsequent year. Termination without cause only shall be effective, if, not less than sixty days prior to the anniversary date, written notice is provided as set forth in *Section 13* of this Agreement. Either party may, after the initial twenty year period, terminate the Agreement for valid cause, on 60 days' notice.

C. After the term of this Management Agreement, MANION agrees that for a period of eighteen (18) months from the date of his separation from employment he will not

accept employment from or otherwise act as an employee, agent or consultant for any trade organization that engages directly (or indirectly through its members or affiliates) in the purchase, sale, distribution, or promotion (or provision of services related to these functions) of marine equipment and/or non-disposable marine supplies, without the express written approval of the BDA Board of Directors.

8. ASSURANCE OF CONFIDENTIALITY:

MANION agrees to hold in strictest confidence all of BDA's Confidential Information and upon termination of his employment to return and relinquish to BDA all originals and copies (in any tangible means of expression) of such Confidential Information.

9. INJUNCTIVE RELIEF; APPLICABLE LAW; ARBITRATION; VENUE; ATTORNEYS FEES:

A. Both parties acknowledge that a lawsuit merely for damages that occur, or are likely to occur, as a consequence of a breach of any of the provisions of this Agreement will be inadequate, and that either party is entitled to injunctive relief in case of any breach, as well as all other relief available via law or equity.

B. This Agreement shall be construed and interpreted in accordance with the laws of the State of Florida.

C. In the event that any dispute arises with respect to the interpretation, execution, or enforcement of this Agreement, the same shall be submitted to binding arbitration either in St. Cloud, Minnesota, or Miami, Florida (whichever location is preferable to the party which files first), pursuant to the then current commercial arbitration rules of the American Arbitration Association, but subject to the understanding that each party may take up to three depositions, and that the arbitrator(s) shall issue complete findings of fact in addition to an award. The power conferred by this paragraph is without prejudice to the right of a party under applicable law to request interim relief directly from any court, tribunal, or other governmental authority of competent jurisdiction, and to do so without prior authorization of the arbitrator(s). Such a request for interim relief neither shall be deemed incompatible with, nor a waiver of, the requirement of arbitration of disputes.

D. If any dispute arising out of this Agreement results in arbitration, litigation, or appeal, the substantially prevailing party shall be entitled to repayment of reasonable attorneys' fees and costs associated with such legal actions.

10. **ENTIRE AGREEMENT; SEVERABILITY CLAUSE; SUB-TITLES; WAIVERS:**

A. This Agreement (including attached Exhibits) contains the entire understanding and agreement of the parties. Any amendment, alteration, modification, or revocation shall be in writing and signed by the parties.

B. If any part of this Agreement is held to be invalid or unenforceable, such holding will not affect any other part of the Agreement that can be given binding effect. If, moreover, any part of this Agreement is for any reason held to be excessively broad as to time, duration, geographical scope, activity or subject, it will be construed, by limiting or reducing it, or by adding a provision as similar to such unenforceable provision as may be possible so as to be legal, valid, and enforceable to the maximum extent necessary for the protection of both parties.

C. All sub-titles in this Agreement are included solely for ease of reference and shall not control or limit the substance of any portion of this Agreement.

D. All waivers of any right(s) provided by this Agreement or by law, or of any breach or default by a Party shall be in writing. The failure to demand specific performance shall not constitute a waiver of any provision of this Agreement, or a waiver of any other default. The waiver by either party of a specific breach of, or default under, this Agreement by the other shall not be deemed a waiver of any subsequent breach or default.

11. **ACTS REQUIRED TO EFFECTUATE THIS AGREEMENT:**

Both parties agree to execute any document(s), resolution(s), or other instrument(s) which may be required of either of them or which may be necessary for the purpose of fulfilling, effectuating, or implementing the provisions of this Agreement.

12. **CONSTRUCTION OF THIS AGREEMENT:**

This Management Agreement has been prepared by MANION and was thoroughly reviewed by the initial Board of Directors who ratified it. The parties agree that this document (including exhibits) is a product of all of their efforts, that it expresses their mutual understandings, and that it should not be interpreted in favor of either party or against either of them merely because of MANION's efforts in preparing it.

13. **NOTICES; CORRESPONDENCE AND WRITTEN APPROVALS:**

All notices, correspondence, and written approvals pursuant to this Agreement shall be sent by the parties via express mail, commercial overnight courier, or confirmed facsimile, to the following address or fax number:

IF TO MANION:

Patrick T. Manion
3983 Pine Point Road
St. Cloud, Minnesota 56303
Fax Number: (612) 253-9946

IF TO BOAT DEALERS' ALLIANCE:

Boat Dealers' Alliance, Inc.
3983 Pine Point Road
St. Cloud, Minnesota 56303
Fax Number: (612) 253-9946

or to any other address or authorized person, or facsimile number, provided that prior written notice is given to the other party with respect to any change in this information. In the event that any notice, correspondence or approval is sent via facsimile, such message is effective upon confirmation of the facsimile, provided that a copy of the message also is sent via express mail or courier pursuant to this section. Additionally, if notice is sent by MANION, he shall provide identical service to the then President of BDA at his/her regular business address or fax number, in addition to notice to BDA.

**IN WITNESS** that this agreement has been accepted by MANION and by BDA, and is binding on each of them, each has signed (and BDA has sealed) and dated this Management Agreement as set forth below.

Patrick T. Manion, Jr.

[signature] Patrick T. Manion Jr.

Date: 3/17/96

Boat Dealers' Alliance, Inc.

By: [signature] *[SEAL]*
Robert Soucy

Date: 3/12/96

CONFIDENTIAL