**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| **PATRICK T. MANION, JR.** | § | **Case No. CV-00-238 (ADM/RLE)** |
| **Plaintiff,** | § | |
| | § | **Memorandum in Opposition to BDA's Motion for Attorneys' Fees** |
| **-vs-** | § | |
| | § | |
| **STEPHEN E. NAGIN, HERZFELD & RUBIN, HERZFELD & RUBIN, P.C., LITCHFORD & CHRISTOPHER, P.A., NAGIN GALLOP FIGUEREDO, P.A., and BOAT DEALERS' ALLIANCE, INC.,** | § | **Oral Argument Requested** |
| **Defendants.** | § | |

## I. INTRODUCTION

Plaintiff, Patrick T. Manion ("Manion") submits this memorandum in opposition to Boat Dealers' Alliance , Inc.'s ("BDA") second Motion for an Award of Attorneys' Fees (the "Second Fee Motion") for the following reasons:

First, the requested fees are not authorized by statute or by the governing contract made the basis of the claims between BDA and Manion. Second, certain of BDA's asserted fees are unreasonable as a matter of law in that BDA seeks fees for its in Manion's bankruptcy, which are not recoverable under the governing contract and which actions were in contravention of a stay imposed by the bankruptcy court. Third, BDA has failed to meet its burden to provide the Court with sufficient evidence of the reasonableness to support the fees at issue. Finally, BDA is estopped and barred from recovering any purported fees as its motion is untimely in all respects.

## II. FACTS

**BDA's First Fee Motion.**

On July 2, 2003, BDA filed its first motion to recover attorneys fees before the Court ("First Fee Motion"). In that motion, BDA not only sought past fees incurred as of the motion's filing, but also sought future fees it anticipated it would incur after June 30, 2003, through and including the hearing on the First Fee Motion. BDA represented to the court in its First Fee Motion, that it would provide support for those fees at the time of the hearing. (Affidavit of William J. French ("French Affidavit"), Ex.1at 1 n.1).

BDA did not meet its obligation, however, and failed to furnish the promised evidentiary support for the fees its asserted fees for July 1, 2003, through December 11, 2003, the date of the hearing on the First Fee Motion. Accordingly, in its order dated February 5, 2004 (the "First Fee Order"), the Court denied BDA its asserted fees for the referenced period. (Affidavit of John J. Wackman ("Wackman Affidavit") , Ex. B at 18 n.11). In its First Fee Order, the Court specifically stated that it had not determined whether BDA was entitled to such fees because BDA had not provided the necessary affidavit support. Id. Not until the present Second Fee Motion, more than thirteen months later, did BDA finally file its affidavits in support of the fees it sought more than one year ago.

**Subsequent Notice of Appeal.**

On June 20, 2003 the Court entered an order to affirm the arbitration award (the "Arbitration Confirmation Order") and entered judgment. (French Affidavit, Ex. 2). Mr. Manion filed his Notice of Appeal on the confirmation and the denial of his motion to vacate the arbitration award on July 18, 2003. (Wackman Affidavit, Ex. C). On December 16, 2004, the Eigth CIrcuit Court of Appeals

denied Mr. Manion's appeal of the Arbitration Confirmation Order and the denial of his motion to vacate. (Wackman Affidavit, Ex.D). BDA's Second Fee Motion was not filed until 82 days after the Court of Appeals entered its judgment on December 16, 2004.

**Other Proceedings and Other Parties.**

On August 4, 2003, Manion filed for bankruptcy protection. On August 13, 2003, Monion's Notice of Filing of Bankruptcy was entered with this Court. (French Affidavit, Ex. 3 at item 131). BDA filed a claim in Manion's bankruptcy proceeding based on the Arbitration Confirmation and the First Fee Order. (French Affidavit, Ex 4 at claims 1 and 3). On February 12, 2002, Manion instituted a separate lawsuit in this Court against individual members of BDA in *Manion v. Alex Stirling, et al.*, No 02-370 ADM/RLE. This Court denied attorneys fees relating to that action in the First Fee Order, and ruled that those third parties could not recover their attorneys' fees under the Management Agreement. (Wackman Affidavit, Ex B at 19).

In this matter, Manion also asserted claims agains his attorney, Stephen Nagin and several of the firms with which Nagin was associated over time. The Court also dismissed Manion's claims against the Nagin defendants, and Manion appealed that dismissal separately. (Wackman Affidavit, Ex B and French Affidavit, Ex. 5, respectively). Manion's appeal regarding the Nagin defendants involved third parties for whom recovery of fees is not authorized under the Management Agreement, yet BDA's Second Fee Motion also improperly seeks fees relating to the appeal of the dismissal of the Nagin defendants.

**BDA's Second Fee Motion.**

On March 8, 2005 BDA filed its Second Fee Motion in this Court seeking: (1) attorneys fees for the period disallowed by the Court more than thirteen months ago in the First Fee Order; and (2)

at least $44,598.00 in attorneys' fees it purports to have incurred in "defending" its claim in bankruptcy.

## III. ARGUMENT

In this matter, attorneys' fees are recoverable only to the extent allowed by the Management Agreement between BDA and Manion. As the Court stated in the First Fee Order, "[l]itigants may recover attorneys' fees 'if specifically authorized by contract or statute.'" (Wackman Affidavit, Ex. B p. 15) (cites omitted). The Management Agreement provides in pertinent part as follows:

> If any dispute arising out of this Agreement results in *arbitration, litigation, or appeal*, the substantially prevailing party shall be entitled to repayment of reasonable attorneys' fees and costs *associated with such legal action.*

(Wackman Affidavit, Ex B at 8)(Emphasis added).

### A. The Contractual Attorneys' Fees Provision is Specific and Limited.

BDA and Manion were the only parties to the Management Agreement. The express and specific language of the Management Agreement determines the scope of recoverable attorneys' fees. To be recoverable, the fees must "reasonable." More importantly, such fees must directly result from only for (1) disptues arising out of the Management Agreement, (2) between BDA and Manion, and (3) are limited to fees for the arbitration, litigation, and appeal of such disputes. In other words, the Magagement Agreement does *not* make a general grant for all attorneys fees incurred by all parties–or even by BDA and Manion–for any and all disputes between them. More specifically, the limited attorneys' fees provision does not authorize recover of fees incurred through bankruptcy. Yet, BDA seeks such fees in its Second Fee Motion.

**B. Fees for Actions in Bankruptcy are not Recoverable under the Management Agreement.**

BDA admits $44,598.00, more than half of the fees currently sought by BDA, do *not* relate to the arbitration between BDA and Manion under the Management Agreement or the following ltigation or appeal. (See Boat Dealers' Alliance, Inc.'s Memorandum of Law in Support of its Motion for an Award of Attorney's Fees ("BDA's Second Fee Brief") at p. 3; Wackman Affidavit at ¶ 10)[1]. Rather, the requested fees relate to BDA's efforts to preserve against the discharge in bankruptcy of the debt represented by the Arbitration Confirmation and the First Fee Order. The Management Agreement does not provide for such attorneys fees; "bankruptcy" is not among the legal actions for which fees are authorized under the governing contract. BDA cites no authority for the proposition that it is entitled to fees related to Manion's bankruptcy and merely states "in an effort to collect the amount due and owing pursuant to the Management Agreement, BDA was forced to defend in bankruptcy court to preserve its claims."

**1. Under the Contract Provision Bankruptcy Fees Cannot be Implied, and there is No General Right to Recover Them.**

Nor would it make sense to read into the contract a grant of fees for the bankruptcy action. "Arbitration," "litigation," and "appeal" have in common that each such theater is a vertical

[1]BDA currently seeks $95,344.77 in fees in BDA's Second Fee Brief at p. 1. But, the only affidavit supplied in support attests to only $44,598.00 in the fees and costs it seeks related to the bankruptcy (Wackman Affidavit , ¶ 10) and $42,876.50 in fees and costs it alleges were incurred in the appellate court (Id., ¶ 7). The total of fees and costs supported by the Wackman affidavit is only $87,474.50. Accordingly, BDA does not have adequate support for the fees it seeks. If the difference between what it alleges and the affidavit relates to costs and expenses set forth on Exhibit F to the Wackman Affidavit, BDA has also failed to support its claim, having made absolutely no effort to support which of those costs and expenses relate to matters between BDA and Manion, much less whether they relate to the appellate or the bankruptcy proceeding. Furthemore, BDA contends it will submit further affidavit support at the hearing on this matter regarding additional fees it will seek. Manion objects to hearing any portion of this motion based on affidavits that are not provided at least 14 days before the hearing as required by Minn. Local R. Fed. P 7.1(a)(1).

progression for litigating the substantive disputes arising from the Management Agreement. The bankruptcy proceeding is not. Rather, Manion's bankruptcy is a legal means for an individual to address a debts portfolio that well exceeds the individuals assets, and allows for creditors to seek some relief for the debt they hold. Manion's bankruptcy is not an action between BDA and Manion or limited to them. Nor does such an action arise from, or naturally follow from, vindicating their respective rights under the Management Agreement.

There is no "general right to attorneys' fees for actions in bankruptcy." Collingwood Grain, Inc. v. Coast Trading Co., 744 F.2d 686, 693 (9th Cir.1984). Quite simply, "work done in a bankruptcy proceeding does not amount to post-judgment collection efforts." In re Hatala, 295 B.R. 62, 68 (Bankr.D.N.J.,2003). Instead, "[a]ctions taken in bankruptcy proceeding are part of a unique, separate matter governed by the bankruptcy code." Id.

Nor can BDA successfully argue that its fees for efforts in bankruptcy court are recoveralbe as "collection efforts," notwithstanding the contract language that does not provide for fees incurred in collection. As BDA is certainly aware, once Manion filed for bankruptcy, all efforts to collect any debt from him were automatically stayed in bankruptcy. Section 11 U.S.C. § 362(a)(6) of the Bankruptcy Code provides for an automatic stay of all such actions as follows:

> A petition filed under ... this title ... operates as a stay ... of (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

Indeed, the burden is on the creditor not to seek relief against a debtor in violation of the stay. *In re Sutton* 250 B.R. 771, 774 (Bkrtcy. S.D.Fla. 2000). BDA cannot contend it is entitled to fees incurred in violation of the automatic stay, which would be fees incurred in violation of law and unreasonable

on their face. BDA's attempt to capture attorneys fees must fail for the additional reason that BDA was legally prohibited from taking legal action for which fees would be incurred.

**2. BDA's Fees in the Manion Bankruptcy are Unreasonable.**

Manion's bankruptcy was a simple Chapter 13 proceeding. (Affidavit of Paul G. Swanson, Bankruptcy Attorney for Patrick Manion ("Swanson Affidavit"), ¶ 4,6). There were no hearings before the bankruptcy court in person. Id. There were no hearings or determinations on objections to any claims. Id. There were no hearings on confirmation of, or objection to, Manion's Chapter 13 Plan. Id. In fact, Manion's Chapter 13 plan provided for payment of 100% of BDA's claim based on its judgment debt. Id. at ¶ 8. Rather than litigating matters with BDA in the bankruptcy, Manion negotiated a bond to satisfy BDA's claim and obtained a letter of credit supporting that bond in favor of BDA. Id. at ¶ 9. Having negotiated and delivered the letter of credit to BDA, Manion allowed his bankruptcy to be dismissed. Id.

Given the simplicity of Manion's bankruptcy, the amount of the fees allegedly incurred by BDA are unreasonable. Id. at ¶ 10. They dwarf the fees incurred by Manion's own bankruptcy attorney, who only spent approximately 15 hours representing the debtors. Id. at ¶5. BDA's fees must be denied for the separate reason it has failed to meet its burden to prove they are reasonable.

**C. BDA is Not Entitled to Fees for matters not involving either Manion or BDA.**

Though BDA has the burden to prove the fees it seeks are "reasonable" and that they "aris[e] out of [the Management] Agreement," the only evidence it offers is a copy of a "billing statement" that contains nothing more than cryptic descriptions of the purported work. The statement, however, includes fees generated for actions over disputes not arising from the Management Agreement, and

for bankruptcy related attorneys' fees. In addition, the billing statement includes cross-claims made by BDA against third parties and even fees in actions that did not involve BDA as a party.

For example, BDA asserted claims against Nagin not involving Manion and also filed cross-appeals regarding them. Yet, BDA seeks to impose upon Manion the fees it incurred relating to claims against Nagin. While BDA has made no attempt to distinguish among the fees for these various, different matters, here are but a few of the many entries having nothing to do with Manion:

| | | |
|---|---|---|
| 03/05/2004 | Eric Magnuson | Review and analysis of issues relating to need to file cross-appeal to preserve pendant claims |
| 03/16/2004 | Sheri Skallet | finalize Notice of Protective Cross-Appeal... |
| 03/16/2004 | Peter Gray | research on need for cross-appeal of dismissal without prejudice of claims against Nagin;...... |
| 05/10/2004 | Peter Gray | review and analysis of minimum requirements of appellant's brief (for cross-appeal) |
| 05/11/2004 | John Wackman | strategize regarding appeal brief |

Numerous other entries are defective on similar grounds. Because BDA has failed to demonstrate by credible evidence that it is enititled under the Management Agreement to the attorneys fees it seeks to recover, BDA's motion for attorneys fees must be denied.

As another example, Manion appealed the dismissal of his claims against the Nagin defendants separately from his appeal of those involving BDA. While BDA had completed briefing in the appeal concerning its claims between Manion on December 1, 2003, even though Manion's appeal regarding the Nagin defendants did not involve BDA, it still seeks fees for matters such as:

| | | |
|---|---|---|
| 05/13/2004 | Richard Nygaard | review brief of Manion in consolidated appeal |
| 05/17/2004 | John Wackman | review Mr. Manion's new appellate briefs |
| 06/15/2004 | Peter Gray | review and analyze Nagin's draft apelles brief |

| | | |
|---|---|---|
| 06/15/2004 | John Wackman | analyze appeal pleadings in Manion versus Nagin case... |

These matters do not involve any claims or appeals between Manion and BDA, can not relate to legal action between them under the Management Agreement, and are not recoverable from Manion.

The proof offered by BDA therefore fails to demonstrate or distinguish those fees that might be related to actions between Manion and BDA arising from the Management Agreement from those legal actions that do not, or those that were directed at third parties for which Manion cannot justly or legally be held responsible.

**D. BDA's Second Fee Motion is Time Barred in All Respects.**

BDA's Second Fee Motion is not one made for fees under the Equal Access to Justice Act. Accordingly, the Minnesota Local Rule of Federal Procedure applicable to BDA's motion is 54.3(b), which provides, "[i]n all [cases not under the Equal Access to Justice Act] in which attorney's fees are sought, the party seeking an award of fees *shall*: (1) Within 30 days of entry of judgment in the case, file and serve an itemized motion for the award of fees. . . ."

**1. BDA's Requested Attorneys' Fees for Appeal are Time Barred.**

BDA already applied for and was awarded certain fees after this Court's determination of the motions to vacate the award. (Wackman Affidavit, Ex. B). Roughly half of BDA's currently asserted fees purportedly relate to Manion's appeal. BDA's Second Fee Motion was filed 82 days after the Court of Appeals entered its judgment on December 16, 2004. In fact, as BDA references, the Advisory Committee's Note to Minn. Local R. Fed P. 54.3 (1991) explains the requirement for timely filing. "In general, applications for attorney's fees should be submitted promptly after a determination of the case on the merits." BDA's Second Fee Motion fails this requirement.

While Minn. Local R. Fed P. 54.3(c) does provide that "[f]or *good cause shown*, the Court may excuse failure to comply with LR 54.3(b)," BDA has made no good cause showing. Instead, BDA appears to assume that its motion for fees for the appeal made in the Court of Appeals somehow excused its failure to timely file in this Court. BDA offers no support for its position that attempting to seek some attorneys' fees in the Court of Appeals stopped the clock in this Court, for there is none. In fact, the only authority cited by BDA supports Manion's position.

In Little Rock School District v. State of Arkansas, 127 F3d 693 (8th Cir. 1997), successful appellees applied for their appellate attorneys' fees in *the district court*. BDA, to the contrary, first filed in the court of appeals.[2] In *Little Rock* the non-movants argued that Rule 47C of the Eighth Circuit Rules of Appellate Procedure, which authorizes parties either to seek appellate attorneys' fees directly in the court of appeals or for remand to the district court for determination deprived the district court of jurisdiction to hear the motion. The Eighth Circuit rejected that argument:

> . . .despite our local rule, the district courts retain jurisdiction to decide attorney's fees issues that we have not ourselves undertaken to decide. . . . Rule 47C cannot and does not affect the jurisdiction of the district courts [as conferred by Congress under 28 U.S.C. §§ 1331-1390].

Id. at 696. As an appellate rule of procedure, the court held, Rule 47C does not alter the district court's jurisdiction to determine attorney's fees, and the district court had always retained jurisdiction to hear a motion for attorney's fees incurred in the appellate process. Id..

Here, unlike the movants in *Little Rock*, BDA did not timely move for fees in the district court and made no attempt to seek a time extension to do so. Indeed, as specifically set forth in *Little Rock*, this Court has always retained jurisdiction to hear motions for fees incurred by BDA in the

---

[2] In fact, in *Little Rock*, in order to preserve timeliness of their application for fees in the district court, the appellees sought and obtained extensions of time to file fee applications with the district court. BDA never made any attempt to extend time in which to file its motion in this Court.

appellate process. Because this Court always retained jurisdiction to determine fees related to the appeal, BDA's motion was ineffective to extend the time to file such motion in this Court. BDA's Second Fee Motion is untimely, and BDA has failed its burden to demonstrate good cause.

Moreover, Eighth Circuit Local Rule 47C(a) requires that "[a] motion for attorney fees, with proof of service, must be filed with the clerk within 14 days after the entry of judgment." The rule does not provide for time extension, relief BDA never sought in any event. The Court of Appeals entered its judgment on December 16, 2004, (Wackman Affidavit, Ex D) but BDA did not file its motion for fees in the Court of Appeals until January 3, 2005, some 18 days later. (French Affidavit, Ex 6). Thus, a timely motion for fees was never made with the Court of Appeals. The Court of Appeals properly denied BDA's untimely and unsupported motion for fees on February 1, 2005. (French Affidavit, Ex. 7).

But even if its ineffective motion in the Court of Appeals had started the 30 day clock anew in this Court (and it did not), BDA again waited more than 30 days after the denial by the Court of Appeals, and did not file its Second Fee Motion until March 8, 2005. BDA's dilatory practice forfeits its requested fees.

Finally, BDA's dilatory actions have unreasonably increased the fees it improperly seeks against Manion. BDA's time records clearly indicate amounts attributed for researching and preparing its motion for appellate fees within the 30 day time period. But, after the time any motion was due in the Court of Appeals, BDA seeks to impose fees for researching the timeliness of that option, and even for preparing materials to accept its late filed motion if deemed untimely. BDA knew its appellate fee motion was late, and yet would impose fees on Manion for their failure. Then, again, BDA seeks additional fees for preparing its late motion in this Court, even though it had

already done so within the required time period. BDA knew when it had to file its fee motions in this Court and did not. Yet, again, it seeks to impose additional fees for its failure. Such fees are unreasonable on their face.

**2. BDA's Second Fee Motion is Grossly Out of Time with Respect to Fees Relating to Manion's Bankruptcy and the Appeal Regarding the Nagin Defendants.**

BDA's Second Fee Motion, as to fees it seeks with respect to Manion's bankruptcy, is untimely for all of the reasons discussed regarding appellate fees above. But, with respect to the bankruptcy fees, the motion is even more eggregiously late. BDA admits its fees were fixed on January 6, 2005 when the bankruptcy court entered its Order Approving Trustee's Final Account, where Manion's bankruptcy was closed and the case discharged. BDA's Second Fee Brief at 3,4-5. January 6, 2005, was well within the thirty day time period from the denial of Manion's appeal. Yet, BDA did not seek its bankruptcy fees within the thirty day period from denial of the appeal. Indeed, BDA did not even seek its alleged bankruptcy fees within thirty days of January 6, 2005. And, BDA never sought any extension of time in which to seek fees relating to the bankruptcy.

Moreover, BDA can not claim that the fee motion it filed in the Court of Appeals somehow extended the time in which it could seek its bankruptcy fees in this Court. The reason is simple. BDA did not seek any fees related to the bankruptcy in its motion to the Court of Appeals. The request in BDA's motion to the Court of Appeals very plainly concerns only "the issue of BDA's entitlement to an award of its attorney's fees incurred in connection with the above-entitled appeal, in which BDA prevailed." (French Affidavit, Ex 6). BDA has made absolutely no showing of any excuse for the extremely late filing with respect to the fees it incurred in bankruptcy. For these reasons, BDA's Second Fee Motion with respect to the bankruptcy must be denied as time barred.

## IV. CONCLUSION

For the forgoing reasons, Manion respectfully requests that BDA's Second Fee Motion be denied in its entirety and requests such other relief at law and in equity to which he may be entitled.

Dated March 31, 2005

Respectfully Submitted,

**s/Richard A. Lockridge**
Richard A. Lockridge (#64117)
Attorneys for Plaintiff Patrick T. Manion
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981

William J. French
Attorneys for Plaintiff Patrick T. Manion
CONANT FRENCH & CHANEY, LLP
1601 Elm Street, Suite 3880
Dallas, Texas 75201
Telephone: (214) 915-0620
Facsimile: (214) 915-0634